1

1

2    UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF NEW YORK

3    ----------------------------------------X
       JAMES MORALES,

4

5                            PLAINTIFF,

            -against-      Case No.:
6                      16-cv-02134-ALC

7    KAVULICH & ASSOCIATES, P.C., GARY
       KAVULICH, ROSEWALL GARDENS ASSOCIATES, LP,
8    F/K/A ROSEWALL GARDENS ASSOCIATES,
       ROSEWALL, INC.,

9                          DEFENDANTS.

10   ----------------------------------------X

11

12               DATE:  November 8, 2016

13               TIME:  3:15 P.M.

14

15          DEPOSITION of the Defendants,

16   ROSEWALL GARDENS ASSOCIATES, LP,

17   F/K/A ROSEWALL GARDENS ASSOCIATES,

18   ROSEWALL, INC., by a witness JONATHAN

19   DESSNER, taken by the Plaintiff, pursuant

20   to a Notice of Appearance and to the

21   Federal Rules of Civil Procedure, held at

22   the Law Office of Ahmad Keshavarz, 16 Court

23   Street, Brooklyn, New York 11241, before

24   Elizabeth Forero, a Notary Public of the

25   State of New York.

```
 1

 2     A P P E A R A N C E S :

 3


 4     LAW OFFICE OF AHMAD KESHAVARZ
          Attorneys for the Plaintiff
 5       JAMES MORALES
         16 Court Street
 6       Brooklyn, New York 11241
         BY:  AHMAD KESHAVARZ, ESQ.
 7              -and-
             JESSICA MOODY, LAW CLERK
 8

 9
       CAMBA LEGAL SERVICES, INC.
10       Co-Counsel for Plaintiff
         JAMES MORALES
11       885 Flatbush Avenue
         Brooklyn, New York 11226
12       BY:  MELISSA KOVEN, ESQ.

13


14     MITCHELL L. PASHKIN
          Attorneys for the Defendants
15       KAVULICH & ASSOCIATES, P.C., GARY
         KAVULICH, ROSEWALL GARDENS ASSOCIATES,
16       LP, F/K/A ROSEWALL GARDENS ASSOCIATES,
         ROSEWALL, INC.
17       775 Park Avenue Suite 255
         Huntington, New York 11743
18       BY:  MITCHELL L. PASHKIN, ESQ.

19
                    *        *        *
20

21

22

23

24

25
```

1

2     F E D E R A L   S T I P U L A T I O N S

3

4

5     IT IS HEREBY STIPULATED AND AGREED by and

6     between the counsel for the respective

7     parties herein that the sealing, filing and

8     certification of the within deposition be

9     waived; that the original of the deposition

10    may be signed and sworn to by the witness

11    before anyone authorized to administer an

12    oath, with the same effect as if signed

13    before a Judge of the Court; that an

14    unsigned copy of the deposition may be used

15    with the same force and effect as if signed

16    by the witness, 30 days after service of

17    the original & 1 copy of same upon counsel

18    for the witness.

19

20     IT IS FURTHER STIPULATED AND AGREED that

21    all objections except as to form, are

22    reserved to the time of trial.

23

24                  *     *     *     *

25

1                    J. DESSNER
2     J O N A T H A N   D E S S N E R, called as
3     a witness, having been first duly sworn by
4     a Notary Public of the State of New York,
5     was examined and testified as follows:
6     EXAMINATION BY
7     MR. KESHAVARZ:
8          Q.     Please state your name for the
9     record.
10         A.     Jonathan Dessner Rosewall.
11         Q.     No middle name?
12         A.     Adam.
13         Q.     What is your address?
14         A.     141-50 85th Road, Briarwood,
15     New York 11435.
16         Q.     The address you gave a moment
17     ago, is that your home address?
18         A.     No.
19         Q.     What is your home address?
20         A.     I am not giving you my home
21     address.
22         Q.     Why not?
23         A.     You have my business address.
24     I will not give you my home address.
25                MR. KESHAVARZ:  Are you going

```
 1                        J. DESSNER
 2            to accept service of a subpoena
 3            against him personally?
 4                 MR. PASHKIN:  He is a
 5            representative of a party; you don't
 6            need to subpoena him.  I am not
 7            accepting service.
 8                 MR. KESHAVARZ:  Then provide
 9            his address.
10            A.    I am not giving you my home
11   address.  You can subpoena me at my work
12   address.
13            Q.    Where do you work?
14            A.    141-50 85th Street, Briarwood,
15   New York.
16            Q.    Where do you work?
17            A.    The name of the company, is
18   that what you are asking me?
19            Q.    Yes.
20            A.    Metropolitan Property Services.
21                 MR. KESHAVARZ:  Mark it for a
22            ruling about not providing his home
23            address.
24            Q.    What do you do at Metropolitan
25   Property Services?
```

```
 1                    J. DESSNER
 2          A.    Vice-president of the
 3   Metropolitan Property Services.
 4          Q.    Was are your responsibilities?
 5          A.    I oversee the day-to-day
 6   operation.
 7          Q.    In what way?
 8          A.    You need to be more specific.
 9          Q.    In what way do you oversee the
10   day-to-day operations?
11          A.    I supervise the staff in
12   running residential properties.
13          Q.    In what way?
14          A.    That's the way I do it.
15          Q.    In what way do you supervise
16   it?
17                MR. PASHKIN:  Asked and
18           answered.
19          Q.    Go ahead.  What do you mean
20   "supervise?"
21                MR. PASHKIN:  Asked and
22           answered.
23          Q.    You can object as to form and
24   other objections, but unless you are
25   instructed not to answer, you have to
```

```
 1                    J. DESSNER
 2    answer the question.
 3         A.    I answered the question.  I
 4    supervise them.
 5         Q.    In what way?
 6         A.    I oversee their job
 7    responsibilities.
 8         Q.    Who?
 9         A.    My staff.
10         Q.    Let's go one at a time.  How
11    many staff?
12              MR. PASHKIN:  Objection to
13          relevancy.  There is no relationship
14          between at his staff and this
15          lawsuit.
16         Q.    How many staff?  Are you going
17    to answer the question?
18         A.    No.
19              MR. KESHAVARZ:  Mark it for a
20          ruling.
21         A.    Is this going to be an
22    aggressive deposition?  If it is, I don't
23    need to be here because quite frankly I am
24    not really comfortable with the way you are
25    deposing me so far.
```

```
 1                    J. DESSNER
 2        Q.    I am asking you pretty straight
 3   forward questions.
 4        A.    It is the tone of your
 5   questions.
 6        Q.    Am I raising my voice?
 7        A.    You are being hostile.
 8        Q.    In what way?
 9        A.    You are being passively
10   hostile.
11        Q.    Am I raising my voice?
12        A.    Let's move onto the next
13   question.
14        Q.    What does Metropolitan Property
15   Services do?
16        A.    It manages residential
17   apartment buildings.
18        Q.    Which residential apartment
19   buildings?
20        A.    2300 Sedgwick Avenue.
21        Q.    Any other apartment buildings?
22        A.    I am not giving out those
23   addresses.
24        Q.    Are there any other apartment
25   buildings?
```

```
1                        J. DESSNER
2                MR. PASHKIN:  Object to
3          relevancy.
4      Q.    My question is, are there any
5  other apartment buildings other than 2300
6  Sedgwick Avenue?
7      A.    My answer is, I am not giving
8  you any other addresses.  That was my
9  answer to your question.
10               MR. KESHAVARZ:  Move to compel.
11     Q.    I didn't ask for an address.
12 What other properties does Metropolitan
13 service?
14               MR. PASHKIN:  Objection to
15          relevancy.
16               MR. KESHAVARZ:  Relevance is
17          not an instruction not to answer the
18          question.  Are you going to instruct
19          your client to answer?
20               MR. PASHKIN:  Well, I will put
21          on the record that he has an
22          obligation to answer to the best of
23          his ability.  I cannot force him to
24          answer.
25               MR. KESHAVARZ:  You can
```

```
 1                      J. DESSNER
 2          instruct him to answer.
 3               MR. PASHKIN:  Under the federal
 4          rules, it is an appropriate question
 5          subject the objection.  Under the
 6          federal rules you do have to answer
 7          the question.
 8          A.    What is it you would like to
 9    know?
10               MR. KESHAVARZ:  Read back the
11          question.
12               (Whereupon, the referred-to
13          question was read back by the
14          Reporter.)
15          A.    Yes.
16          Q.    How many?
17          A.    I am not answering that
18    question.
19          Q.    Why not?
20          A.    I don't want to.
21               MR. KESHAVARZ:  Will you
22          instruct your client to answer the
23          question?
24               MR. PASHKIN:  I will instruct
25          him under the federal rules he is
```

```
 1                    J. DESSNER
 2         required to answer the questions
 3         subject to the objection that was
 4         made.
 5         Q.    What is your answer?
 6         A.    I will take a moment with my
 7    attorney and talk to him outside.
 8              MR. PASHKIN:  Let's go.
 9              (Whereupon, a short recess was
10         taken.)
11         Q.    How many properties does
12    Metropolitan Property Services manage?
13              MR. PASHKIN:  Objection to
14         relevance.
15         A.    I will limit my question to one
16    particular building, my answers rather to
17    this one particular building.
18         Q.    Why?
19         A.    Because that is what I chose to
20    do.
21              MR. KESHAVARZ:  Are you going
22         to instruct the witness to answer.
23              MR. PASHKIN:  I have instructed
24         my witness as to his obligations
25         under federal rules.  I have
```

```
 1                      J. DESSNER
 2           instructed him the question has to be
 3           answered to subject to the objection.
 4           I cannot physically force him to
 5           answer the question.
 6                MR. KESHAVARZ:  Mark the issue
 7           for a ruling by the court.
 8           Q.    What is your relationship with
 9     Rosewall Gardens Associates, LLP?
10           A.    Rosewell Garden Associates is
11     the ownership of 2300 Sedgwick Avenue.  We
12     run the property.
13           Q.    "We" being Metropolitan
14     Property Services?
15           A.    Yes.
16           Q.    What is your relation to
17     Rosewall, Inc.
18           A.    I don't know who that is.
19           Q.    Do you know if Rosewall, Inc.,
20     is the general partner for Rosewall Gardens
21     Partnership?
22           A.    I do not know.
23           Q.    Who is the owner of Rosewall
24     Gardens Associates?
25           A.    I believe the LLC.
```

```
 1                    J. DESSNER
 2              MR. PASHKIN:  Objection to
 3        relevancy.
 4        Q.    Well, it is listed as an LLP.
 5   Do you know who has an ownership interest
 6   in it?
 7        A.    I do not.
 8        Q.    Then why are you a corporate
 9   representative for Rosewall Gardens
10   Associates, LLP if you don't know who owns
11   it?
12        A.    I am not a corporate
13   representative.  I work for the management
14   company.
15        Q.    Well, you are testifying here
16   as a corporate representative of Rosewall
17   Gardens Associates, LLP?
18        A.    I am testifying as a
19   representative of the management company
20   who manages Rosewall Gardens Associates.
21        Q.    So the answer to my question is
22   "no?"
23        A.    I think I just answered the
24   question.  I told you what it was, what my
25   position was.
```

                              J. DESSNER

1                              J. DESSNER

2          Q.     Your position is what is it.

3     For example, are the corporate

4     representative testifying today on behalf

5     of Rosewall Gardens Associates?

6                    MR. PASHKIN:   He is as it

7               relates to this lawsuit.

8          Q.     Is that your understanding?

9          A.     That is my understanding.

10         Q.     If it is okay, I will say

11    "Rosewall" to mean "Rosewall Gardens

12    Associates, LLP" and "Rosewall Gardens

13    Associates;" is that okay?

14                   MR. PASHKIN:   I will object.

15              They are not the same, so.

16         Q.     So why did Rosewall issue a

17    restraint against my client's TD bank

18    account when Rosewall had no judgment

19    against him?

20         A.     I don't know.

21         Q.     When you say you are the

22    property management for Rosewall, what does

23    that entail?

24         A.     It entails taking care of the

25    day-to-day responsibilities of running the

```
 1                     J. DESSNER
 2    property.
 3          Q.     Such as?
 4          A.     Paying bills, collecting rent,
 5    doing repairs.
 6          Q.     Paying bills, collecting rent,
 7    doing repairs?  Anything else?
 8          A.     I mean there are a multitude of
 9    things.
10          Q.     What else?
11          A.     Hiring staff, firing staff
12    hiring outside vendors.
13          Q.     What else?
14          A.     That is pretty much about it.
15          Q.     Now, was it Metropolitan
16    Properties Service that retained Mr.
17    Kavulich to collect a debt against Mr.
18    Morales?
19          A.     It was Rosewall Garden
20    Associates that retained him.
21          Q.     Metropolitan Property Services
22    was acting as the agent of Rosewall; is
23    that correct?
24          A.     Yes.
25          Q.     So all of the acts taken on
```

```
 1                    J. DESSNER
 2    behalf of Rosewall were actually taken by
 3    someone at Metropolitan Property Services,
 4    is that correct?
 5         A.    Yes.
 6         Q.    Who at Metropolitan Property
 7    Services retained Mr. Kavulich?
 8         A.    That would be me.
 9         Q.    Anyone else?
10         A.    No.
11         Q.    Are you the person who is in
12    charge of retaining attorneys to file
13    lawsuits to collect rent on behalf of
14    Metropolitan Property Services?
15         A.    Yes.
16         Q.    Also to retain attorneys for
17    evictions?
18         A.    Yes.
19         Q.    How did you decide to retain
20    Mr. Kavulich to attempt to collect rent
21    from my client?
22         A.    I don't recall.
23         Q.    How many firms have you
24    retained to collect debts?
25                    MR. PASHKIN:  Objection to
```

```
 1                      J. DESSNER
 2         relevancy.
 3         A.    I don't recall.
 4         Q.    More than one?
 5              MR. PASHKIN:  Objection to
 6         relevancy.
 7         A.    Over the course of time?
 8         Q.    How many?
 9         A.    I don't recall.
10         Q.    Currently how many attorneys?
11              MR. PASHKIN:  Objection to
12         relevancy.
13         A.    Right now I have one.
14         Q.    That is Mr. Kavulich?
15         A.    No.
16         Q.    Who is that?
17         A.    Guttman & Mintz.
18         Q.    Have you ceased doing business
19    with Kavulich's firm?
20         A.    I don't do business with him
21    anymore, no.
22         Q.    Is this because of this
23    lawsuit?
24         A.    No.
25         Q.    Why is that?
```

```
1                    J. DESSNER

2              MR. PASHKIN:  Objection to

3         relevance.

4         A.    We chose to use another firm.

5    I don't recall why.

6         Q.    Is Mr. Kavulich's firm the firm

7    you generally used to file lawsuits to

8    collect rent and then you ceased using him;

9    is that correct?

10        A.    Yes.

11        Q.    When did that occur?

12        A.    I don't recall the date.

13        Q.    Do you recall approximately

14   when that was?

15             MR. PASHKIN:  Objection to

16        relevance.

17        A.    It has been several years.

18        Q.    Did you terminate Mr. Kavulich

19   from representing the property owners

20   through Metropolitan Property Services, did

21   you terminate him before 2015?

22        A.    I don't recall.

23        Q.    You said several years ago?

24        A.    I believe so.

25        Q.    You believe it was before 2015?
```

```
 1                      J. DESSNER
 2        A.    I don't recall.
 3        Q.    Well, if he filed a lawsuit
 4   against my client in May, he filed an
 5   objection to my client's exemption claim
 6   form in May 2015, did he have authority to
 7   do that?
 8        A.    I don't know.
 9        Q.    Who would know?
10        A.    Gary Kavulich would know.
11        Q.    All the actions done for
12   Rosewall are done by Metropolitan Property
13   Services; right?
14        A.    Yes.
15        Q.    Is there a document that would
16   reflect what date Metropolitan Property
17   Services ceased using Mr. Kavulich to
18   collect debts?
19        A.    No.
20        Q.    Was there a termination letter?
21        A.    He was never terminated.
22        Q.    What was he?
23        A.    We just stopped giving him
24   cases.
25        Q.    But did you pull away the
```

```
 1                      J. DESSNER
 2   existing cases he was on?
 3        A.    No.
 4        Q.    He still continues to represent
 5   properties managed by Metropolitan Property
 6   Services?
 7        A.    Whatever cases he was working
 8   on at the time he continued to work on.
 9        Q.    Does either Metropolitan
10   Property Services or Rosewall have any
11   insurance coverage?
12        A.    For?
13        Q.    For anything.
14             MR. PASHKIN:   Objection to
15         relevancy.
16        A.    Yes.
17        Q.    Did you submit a claim with an
18   insurance company regarding allegations
19   made in this lawsuit?
20        A.    Yes.
21        Q.    How many insurance companies
22   did you submit the claim to?
23        A.    One.
24        Q.    What was the result?
25        A.    They coverage was denied.
```

```
 1                      J. DESSNER
 2          Q.     Do you know why?
 3          A.     Because they didn't cover it
 4   under the policy.
 5          Q.     Did you appeal that decision?
 6          A.     No.
 7          Q.     Are you paying Mr. Kavulich out
 8   of pocket to defend you in this case?
 9               MR. PASHKIN:   Objection.   No
10          basis.   Objection to relevance,
11          privilege.
12          A.     No.
13          Q.     Do you know who is?
14          A.     Who is what.
15          Q.     Paying Mr. Kavulich to defend
16   this lawsuit?
17          A.     I don't know.
18          Q.     Who would know?
19          A.     I guess Mr. Kavulich would
20   know.
21          Q.     Do you know if anyone is paying
22   Mr. Kavulich to represent the defendants in
23   this lawsuit?
24          A.     I don't know.
25          Q.     Do you keep a ledger of the
```

```
 1                    J. DESSNER
 2    amounts claimed to be owed by Mr. Morales?
 3         A.    Yes, there was a ledger.
 4         Q.    Have you provided that ledger
 5    to Mr. Kavulich?
 6         A.    Yes.
 7         Q.    Did you provide that ledger to
 8    Mr. Pashkin?
 9         A.    No.
10         Q.    What documents did you provide
11    Mr. Kavulich regarding Mr. Kavulich's
12    attempts to collect a debt against Mr.
13    Morales?
14         A.    I don't recall.  I believe it
15    was a number of years ago.  I am assuming
16    the rent ledger, the lease and any
17    additional charges Mr. Morales may have run
18    up over the course of his tenancy.
19         Q.    Anything else?
20         A.    Any previous lawsuits such as
21    landlord/tenant actions, I don't know off
22    hand.
23         Q.    There is a co-debtor that the
24    judgment was rendered against Miss Clara
25    Potter in the housing lawsuit by Rosewall,
```

```
 1                      J. DESSNER
 2    do you know if that is the case?
 3          A.    I believe that is the case.
 4          Q.    You've received payments in
 5    collecting the judgement from Miss Potter;
 6    correct?
 7          A.    I don't know.
 8          Q.    If payments were received by
 9    Mr. Kavulich in an attempt to collect the
10    judgment against Miss Potter, you would
11    have a ledger that would credit those
12    payments?
13          A.    Most likely.
14          Q.    So is it you that provides Mr.
15    Kavulich with the accounting as to the
16    amount owed or vice versa?
17          A.    On the inception of the attempt
18    to collect the debt?
19          Q.    Both.
20          A.    On the inception we would
21    provide him with a balance that was
22    outstanding.
23          Q.    And subsequent to the filing of
24    the lawsuit?
25          A.    We would not provide him any
```

```
 1                    J. DESSNER
 2     other information.
 3          Q.     Would he be provided with an
 4     accounting of the payments received after
 5     the filing of the lawsuit?
 6          A.     We would get checks he would
 7     collect.
 8          Q.     You would report those checks
 9     into some sort of system?
10          A.     Yes.
11          Q.     So you have a ledger reflecting
12     the payments made on the judgement.
13          A.     Most likely.
14          Q.     Do you know whether or not they
15     were produced in this case?
16          A.     I don't know.
17          Q.     Will you produce a copy to your
18     attorney?
19          A.     I will certainly discuss it
20     with my attorney.  If he wants to produce
21     it, we'll produce it.
22          Q.     What other documents do you
23     have regarding Mr. Morales or Miss Potter
24     after the date of the landlord-tenant
25     action?  Do you have any documents after
```

```
 1                    J. DESSNER
 2   the date of the landlord-tenant action?
 3        A.    Not that I am aware of.
 4        Q.    Are you able to determine the
 5   total amount currently due on the judgment
 6   against Miss Potter?
 7        A.    I don't know at this moment.
 8        Q.    Are you able to determine that
 9   from your records?
10        A.    I would have to look at the
11   paperwork.
12        Q.    You have the ability to
13   determine that from your records?
14        A.    I imagine.
15        Q.    Do you know if Rosewall has
16   made a demand for Kavulich to indemnify
17   them in this case?
18             MR. PASHKIN:  Objection to
19         relevance.
20        A.    I don't know.
21        Q.    Who would make the demand for
22   indemnification?
23        A.    I don't know.
24        Q.    There is no one else at
25   Metropolitan Property Services that deals
```

```
 1                       J. DESSNER
 2    with attorneys other than you; right?
 3          A.     Right.
 4          Q.     Would there be anyone else that
 5    would know other than you?
 6          A.     No.
 7          Q.     Did you demand Kavulich
 8    indemnify Rosewall?
 9          A.     There was no demand.
10          Q.     Or Metropolitan Property
11    Services?
12          A.     No.
13          Q.     Demand, request?
14          A.     No.
15          Q.     You haven't paid anything for
16    costs in defending this lawsuit; correct?
17          A.     No.
18          Q.     Are you expecting to have to
19    pay for any costs for defend this FDPCA
20    lawsuit?
21          A.     No.
22          Q.     Why not?
23          A.     I had a discussion with Mr.
24    Kavulich and he said he would cover the
25    costs.
```

```
 1                      J. DESSNER
 2          Q.    He agreed to do that?
 3          A.    Yes.
 4          Q.    As to if there is a judgment
 5     rendered against Rosewall, is Mr. Kavulich
 6     agreeing to pay that judgment on behalf of
 7     Rosewall?
 8                 MR. PASHKIN:  Objection to
 9          relevancy.
10          A.    Yes.
11          Q.    Did you insist that Mr.
12     Kavulich file an answer in this lawsuit?
13                 MR. PASHKIN:  Objection to
14          relevancy.
15          A.    Did I insist?
16          Q.    Did you ask Mr. Kavulich an
17     answer in this lawsuit?
18          A.    Mr. Kavulich informed me that
19     he was filing an answer.
20          Q.    Did he do that at your
21     insistence?
22          A.    No, he did that on his own.
23          Q.    Prior to no longer providing
24     your cases to Mr. Kavulich, how many cases
25     did Rosewall have Mr. Kavulich collecting
```

```
 1                    J. DESSNER
 2    on?
 3              MR. PASHKIN:   Objection to
 4         relevancy.
 5         A.    I don't know.
 6         Q.    More than one?
 7         A.    Probably.
 8         Q.    More than two?
 9         A.    I don't know.
10              MR. PASHKIN:   Objection to
11         relevancy.
12         Q.    You don't know if Mr. Kavulich
13    represented Rosewall for more than two
14    claims?
15         A.    I don't know.
16         Q.    Do you know if Mr. Kavulich
17    represented Metropolitan Property Services
18    for more than two lawsuits?
19              MR. PASHKIN:   Objection to
20         relevancy.
21         A.    He did not.
22         Q.    In the suits for rent Mr.
23    Kavulich files on behalf of Rosewall, do
24    you have to pay him an attorney's fee to
25    bring that suit?
```

```
 1                    J. DESSNER
 2               MR. PASHKIN:  Objection to
 3           relevancy.
 4          A.    No.
 5          Q.    So any collection lawsuit filed
 6     by Mr. Kavulich on your behalf, you don't
 7     pay Mr. Kavulich any attorney's fees for
 8     either landlord-tenant or rent collection;
 9     is that true?
10               MR. PASHKIN:  Objection to
11           relevancy.
12          A.    Mr. Kavulich does not represent
13     us in landlord-tenant matter in collections
14     matters only.
15          Q.    In collection lawsuits filed by
16     Mr. Kavulich on your behalf, is Mr.
17     Kavulich paid for his attorney's fees for
18     bringing that suit?
19          A.    His fees are deducted from when
20     he makes collection.
21          Q.    As a percentage of the
22     collection?
23          A.    Yes.
24          Q.    Do you recall what the
25     percentage was?
```

```
1                   J. DESSNER
2              MR. PASHKIN:  Objection to
3         relevancy.
4         A.    I believe it is was one third.
5         Q.    So, for example, he does not
6    charge you five hundred dollars for filing
7    a rent lawsuit?
8         A.    No.
9         Q.    Do you know why he puts in his
10   collection lawsuits a demand for five
11   hundred dollars in attorney's fees?
12        A.    I do not.
13        Q.    Has he ever discussed that with
14   you?
15        A.    No.
16        Q.    If he is able to obtain payment
17   for the additional five hundred dollars in
18   attorney's fees, do you know if that is
19   supposed to be divided with you or go
20   entirely to him?
21              MR. PASHKIN:  Objection to
22         relevance.
23        A.    I don't participate in any
24   legal fees he collects or Rosewall does not
25   participate in any legal fees he collects.
```

```
 1                    J. DESSNER
 2         Q.    But, for example, if you file
 3    suit and it says that the consumer owes a
 4    thousand dollars to Rosewall and he
 5    contends in the lawsuit is entitled to five
 6    hundred dollars in attorney's fees, and he
 7    collects fifteen hundred dollars, is he
 8    supposed to remit two third of the fifteen
 9    hundred dollars to you?
10         A.    I believe he is only submitting
11    two-thirds of our share of the rent.
12         Q.    What made you decide to retain
13    Mr. Kavulich to file rent collection
14    lawsuits for you?
15              MR. PASHKIN:  Objection to
16         relevancy.
17         A.    I don't recall.
18         Q.    How, if at all, do you
19    communicate with Mr. Kavulich during the
20    course of rent collection lawsuits?
21         A.    By phone.
22         Q.    Any other manner?
23         A.    No.
24         Q.    Generally speaking, what is the
25    type of things you would speak on the phone
```

```
 1                    J. DESSNER
 2    with Mr. Kavulich regarding the collection
 3    lawsuits?
 4         A.    We didn't speak on the phone
 5    that often.  He would come into the office.
 6         Q.    What would he communicate to
 7    you generally speaking regarding these
 8    suits that he files on your behalf to
 9    collect rent?
10         A.    It wasn't all that much
11    communication.  It was giving him people
12    who we thought had outstanding arrears.
13    And discussing different documents he
14    needed to have to pursue those lawsuits.
15         Q.    Do you make any representations
16    to Mr. Kavulich about the accuracy as to
17    the amounts claimed to be due?
18         A.    No.
19         Q.    Do you make any representations
20    to Mr. Kavulich about whether there is a
21    valid judgment existing somewhere?
22         A.    No.
23         Q.    Is Mr. Kavulich supposed to
24    make those determinations independently of
25    what you tell him?
```

```
 1                    J. DESSNER
 2         A.    Yes.
 3         Q.    Does he do that?
 4         A.    I don't know.  I am assuming he
 5    does.
 6         Q.    Do you have any reason to think
 7    he has not?
 8         A.    No.
 9         Q.    How often does Mr. Kavulich
10    forward monies that he collects on your
11    behalf?
12         A.    It was probably on a monthly to
13    six-week basis.
14         Q.    Does he cut a single check?
15              MR. PASHKIN:  Objection to
16         relevancy.
17         A.    No.
18         Q.    How is the money transferred?
19              MR. PASHKIN:  Objection to
20         relevancy.
21         A.    I think it was a check per
22    case.
23         Q.    Does he physically write a
24    check or electronic check?
25              MR. PASHKIN:  Objection to
```

```
 1                    J. DESSNER
 2          relevancy.
 3          A.     I don't recall.
 4          Q.     Is there any electronic
 5     interface between Mr. Kavulich's office and
 6     you?
 7          A.     No.
 8          Q.     Do you communicate by email?
 9          A.     No.
10          Q.     Have you communicated by email
11     to Mr. Kavulich regarding Mr. Morales?
12          A.     No.
13          Q.     Do you transfer a spreadsheet
14     to Mr. Kavulich as a ledger in terms of
15     determining balances due?
16          A.     What do you mean "transfer?"
17          Q.     When you give him a ledger, do
18     you mean a physical piece paper or an
19     electronic file like a spreadsheet?
20          A.     There is no electronic file.
21     It would have been a physical piece of
22     paper.
23          Q.     What do you use to generate
24     that ledger?  Is it a program?
25          A.     It would be the tenant's rent
```

```
 1                    J. DESSNER
 2   ledger account.
 3        Q.    Was there a program you used to
 4   generate that?
 5        A.    There was at the time.  I mean
 6   it is part of the rent management program.
 7        Q.    What rent management program?
 8        A.    It was called Micro Management.
 9        Q.    Was that used during the time
10   of the rent collection lawsuit filed
11   against Mr. Morales?
12              MR. PASHKIN:  Objection to
13         relevancy.
14        A.    He would have been given a
15   ledger printed out of our computer system.
16        Q.    When did use the Micro
17   Management software system?
18        A.    For this case?
19        Q.    I am trying to figure out how
20   you generate a ledger?
21        A.    Yes.
22        Q.    You said you used Micro
23   Management software to generate the ledger?
24        A.    It was part of our everyday
25   rent management program.
```

```
 1                    J. DESSNER
 2        Q.    The name of that rent
 3   management program was Micro Management?
 4        A.    Yes.
 5        Q.    How long have you used Micro
 6   Management?
 7             MR. PASHKIN:   Objection to
 8         relevancy.
 9        A.    For several years.
10        Q.    Do you ever communicate with
11   the marshal regarding judgements that
12   Kavulich is attempting to collect on your
13   behalf?
14        A.    No.
15        Q.    Do you ever deal with banks
16   having accounts restrained for debts that
17   Mr. Kavulich is attempting to collect on
18   your behalf?
19        A.    No.
20        Q.    Has there ever been any claim
21   that Mr. Kavulich was attempting to collect
22   on a judgment that did not in fact exist?
23        A.    No.
24        Q.    To your knowledge, have any of
25   the law firms you have used been accused of
```

```
 1                    J. DESSNER
 2   executing on a non-existing judgment?
 3              MR. PASHKIN:   Objection to
 4        relevancy.
 5        A.    Not for me.
 6        Q.    Or collect on a non-existent
 7   judgement?
 8        A.    Not on me behalf.
 9        Q.    Do you know if that has
10   happened an someone else's behalf?
11              MR. PASHKIN:   Objection to
12        relevancy.
13        A.    I do not.
14        Q.    To your knowledge, has anyone
15   ever contended that an account that
16   Kavulich was collecting on behalf of was
17   being collected in a manner that violated
18   the law?
19              MR. PASHKIN:   Objection to
20        relevance.
21        A.    No.
22        Q.    If a consumer contacts you
23   regarding a debt Mr. Kavulich is attempting
24   to collect on your behalf, is it common for
25   you to communicate with that consumer or
```

```
 1                    J. DESSNER
 2  forward that consumer to Mr. Kavulich's
 3  office?
 4                MR. PASHKIN:  Objection to
 5          relevance.
 6       A.    I don't recall having anybody
 7  contact me on a debt Mr. Kavulich was
 8  trying to collect.
 9       Q.    Other than Mr. Pashkin, who
10  have you spoken with regarding this
11  lawsuit?
12       A.    Just our insurance carrier.
13       Q.    Do you have any written
14  communications with the insurance carrier?
15       A.    I don't know.
16       Q.    Well, did you send or have
17  someone send on your behalf to the
18  insurance carrier a written demand for
19  coverage?
20                MR. PASHKIN:  Objection to
21          relevance.  Asked and answered.
22       A.    I don't know.
23       Q.    But you know a claim was
24  submitted with the insurance company that
25  was denied?
```

```
 1                         J. DESSNER
 2          A.    Yes.
 3          Q.    You are saying you don't know
 4    if that claim was submitted in writing?
 5          A.    I don't know.
 6          Q.    You don't know if the rejection
 7    was submitted in writing?
 8                MR. PASHKIN:   Objection to
 9           relevance.
10          A.    The rejection was submitted in
11    writing to us.
12          Q.    That is one document.  Do you
13    have possession of that document?
14          A.    Not with me.
15          Q.    Did you provide a copy of that
16    document to your attorney?
17          A.    No.
18          Q.    Why not?
19          A.    I haven't.
20          Q.    Has your attorney requested you
21    provide any documents in relation to this
22    lawsuit?
23          A.    No.
24          Q.    Do you know why that is?
25          A.    I don't know.
```

```
 1                    J. DESSNER
 2              MR. KESHAVARZ:  Mark this as
 3         Plaintiff's 1.
 4              (Whereupon, the aforementioned
 5         Answer was marked as Plaintiff's
 6         Exhibit 1 for identification as of
 7         this date by the Reporter.)
 8         Q.    I am going to show you what has
 9    been marked as Plaintiff's 1.  It is the
10    "Answer" your attorney filed on your behalf
11    in this lawsuit.  I am going to ask you a
12    series of questions that you may or may not
13    be able to answer.
14         A.    Okay.
15         Q.    Have you had a chance to review
16    this Exhibit 1?
17         A.    Yes.
18         Q.    If you scroll down to page
19    eight where it says "Second Affirmative
20    Defense," you may or may not be able to
21    answer these questions, I am just asking.
22    What is Rosewall's basis that the second
23    affirmative defense that the instant action
24    is barred by the expiration of the
25    applicable statute of the limitations?
```

```
1                        J. DESSNER
2           A.    What?
3           Q.    Do you know what the basis for
4     Rosewall's second affirmative defense
5     listed on page eight?
6           A.    No.
7           Q.    Do you know what the basis of
8     Rosewall's third affirmative defense is?
9           A.    No.  I mean you are asking me
10    questions without giving me backup to read.
11          Q.    I understand that.  You have
12    been designated as the corporate
13    representative of Rosewall for the claims
14    and defenses of this suit.  Now you may not
15    know what the answer is, but I have to go
16    down this checklist.  If the answer is "I
17    don't know," that's fine.  But I have to go
18    through this checklist of the affirmative
19    defenses.  Do you know what the basis of
20    the fourth affirmative defense is?
21          A.    No.
22          Q.    Do you what the basis of any of
23    the affirmative defenses are?
24          A.    No.
25          Q.    Does Mr. Kavulich communicate
```

```
 1                    J. DESSNER
 2   with you about any of the cases that he's
 3   handling for Metropolitan Property Services
 4   in anyway other than to give you checks?
 5       A.    No.
 6       Q.    He does not tell what the
 7   status of the cases are?
 8       A.    No.
 9       Q.    He does not tell you whether
10   there is a judgement entered or not?
11       A.    No.
12       Q.    He does not tell if there is a
13   complaint against him for the collection he
14   is doing on behalf of you?
15       A.    No.
16       Q.    Is there a requirement for Mr.
17   Kavulich to inform Metropolitan Property
18   Services of any complaints against him by
19   consumers whom he is attempting to collect
20   against?
21       A.    What do you mean a
22   "requirement?"  On whose behalf?
23       Q.    Does Metropolitan require
24   Kavulich to inform Metropolitan of
25   complaints that are made against Kavulich
```

```
 1                    J. DESSNER
 2   about alleged misconduct by Kavulich in an
 3   attempt to collect debt for Metropolitan?
 4        A.    We do not have a specific
 5   requirement.  I would imagine if there was
 6   a complaint against him, he would be
 7   obligated to tell us.
 8        Q.    But you don't know of any
 9   contract or legal obligation?
10        A.    No.
11        Q.    Just to be clear so for all of
12   the rent collection cases that Kavulich
13   does for Metropolitan, those are all on a
14   percentage basis?
15             MR. PASHKIN:  Objection to
16        relevancy.
17        A.    Yes.
18        Q.    They are all a third?
19             MR. PASHKIN:  Objection to
20        relevancy.
21        A.    I believe so.
22        Q.    Do you know that the allegation
23   in this suit that Kavulich was collecting
24   on judgement, an alleged judgment against
25   Mr. Morales when there was no judgement in
```

```
 1                      J. DESSNER
 2    place; is that your understanding?
 3         A.    Yes.
 4         Q.    Does Metropolitan require
 5    Kavulich to take any steps or have a
 6    mechanism in place to avoid violating laws
 7    when they collect rent on your behalf?
 8         A.    No.
 9         Q.    You don't do any audits for
10    example of his firm?
11         A.    No.
12         Q.    You don't require him to
13    produce copies of lawsuits that are filed
14    against him for debts that he collects on
15    behalf of Metropolitan?
16         A.    No.
17         Q.    Do you know the first time you
18    became aware of fact there was no judgment
19    against Mr. Morales?
20         A.    I believe when this lawsuit
21    transpired.
22         Q.    Did you forward the account to
23    Kavulich to collect against Mr. Morales?
24    Did you forward Kavulich a judgment
25    account?
```

```
 1                    J. DESSNER
 2        A.    I didn't forward anything to
 3   Mr. Kavulich.
 4        Q.    Mr. Kavulich was not an
 5   attorney in landlord/tenant cases?
 6        A.    That is correct.
 7        Q.    That was Gutman Mintz?
 8        A.    I don't know.
 9        Q.    There was a judgment entered
10   against the co-debtor in the housing case
11   but not against Mr. Moraler, correct?
12        A.    I don't know offhand.
13        Q.    You forwarded Mr. Morales'
14   account to Kavulich to collect, correct?
15        A.    Yes, I think we talked about
16   Mr. Kavulich coming to the office and we
17   would give him people that owes us money.
18   Is that what you mean?
19        Q.    You provided Mr. Kavulich the
20   account for Mr. Morales to collect on,
21   correct?
22        A.    We provided him with rent
23   figures.  Mr. Kavulich started a collection
24   action against Mr. Morales.
25        Q.    Did you represent to Mr.
```

```
 1                    J. DESSNER
 2   Kavulich that there was a judgement against
 3   Mr. Morales?
 4        A.    No.
 5        Q.    Did Gutman Mintz communicate
 6   directly with Kavulich regarding the
 7   lawsuit against Mr. Morales?
 8        A.    I don't know.
 9        Q.    Is that typically the case when
10   you have a landlord/tenant law firm and a
11   different law firm that is supposed to
12   collect on a judgment from that
13   landlord/tenant case, is it typical that
14   the file goes from the prior attorney to
15   the new attorney or does it go back to
16   Metropolitan to give to the new attorney?
17             MR. PASHKIN:  Objection to
18          relevance and beyond the witness's
19          knowledge what attorneys former and
20          present do in general.
21        Q.    Can you answer if you know?
22        A.    I don't know.
23        Q.    Other than the ledger, what
24   documents did you provide Mr. Kavulich
25   regarding the debt he was attempting to
```

```
 1                    J. DESSNER
 2   collect against Mr. Morales?
 3        A.    I don't know specifically.  It
 4   was probably his lease agreement.  If there
 5   was previously any landlord/tenant actions,
 6   copies of those stipulations and any
 7   personal information we might have had like
 8   a tenant application.
 9        Q.    Anything else?
10        A.    No.
11        Q.    So you didn't rely on Gutman
12   Mintz to provide that information to Mr.
13   Kavulich, regarding Mr. Morales; is that
14   right?
15        A.    What information exactly?
16        Q.    Any information?  I am trying
17   to figure out does the file go from Gutman
18   Mintz directly to Kavulich regarding Mr.
19   Morales or does it go back from Gutman
20   Mintz to Metropolitan?
21        A.    Gutman Mintz does not have a
22   file.  What file?
23        Q.    The landlord/tenant action
24   against Mr. Morales and the co-debtor?
25        A.    We usually have a copy of the
```

```
1                    J. DESSNER
2     court stipulation.  I don't know what he
3     does with the index number if it goes back
4     to the prior attorney or not.  I don't
5     know.
6          Q.    Do you know if Gutman Mintz
7     forward the file to Kavulich?
8          A.    I don't know.
9          Q.    Do you have possession of the
10    full landlord/tenant file for Mr. Morales?
11               MR. PASHKIN:  Objection to
12          form.
13          A.    I am not quite sure what you
14    mean by "full landlord/tenant file."
15          Q.    Do you have all the documents
16    filed in court in the landlord/tenant
17    action against Mr. Morales?  Do you have
18    possession of all those documents?
19          A.    We get copies of court
20    stipulations in landlord/tenant cases.  So
21    during the course of the tenant's tenancy
22    in an apartment, we know when to collect
23    and when to do repairs, things like that.
24    That is all the information I get from
25    them.
```

1                    J. DESSNER

2          Q.    Just stipulations not the

3     underlying lawsuit or motions?

4          A.    Usually no.

5          Q.    In this case Mr. Kavulich, I

6     believe, produced a number, it says what it

7     says, you would not have produced to Mr.

8     Kavulich any of the court papers other than

9     any stipulation, correct?

10         A.    That's correct.

11              MR. KESHAVARZ:  Mark this

12         please as Plaintiff's 2 for

13         identification.

14              (Whereupon, the aforementioned

15         debt recovery sheet was marked as

16         Plaintiff's Exhibit 2 for

17         identification as of this date by the

18         Reporter.)

19         Q.    I am showing you what has been

20    marked as Plaintiff's 2.  Do you know what

21    that document is, sir?

22         A.    It looks like a debt recovery

23    sheet from Kavulich & Associates.

24         Q.    Have you seen that type of

25    document before?

```
 1                    J. DESSNER
 2         A.    No.
 3         Q.    What you called the payment
 4    ledger, that you provide Mr. Kavulich is
 5    that reflected anywhere on Exhibit 2?
 6         A.    No.
 7              MR. KESHAVARZ:  I will pass the
 8         witness to his attorney.
 9              MR. PASHKIN:  I have nothing.
10              MR. KESHAVARZ:  Are we going to
11         come to an agreement as to Mr.
12         Kavulich's deposition in the Morales
13         case?
14              MR. PASHKIN:  It is sometime
15         next week, you know.
16              MR. KESHAVARZ:  You are not
17         going to produce him on Thursday?
18              MR. PASHKIN:  I can't.  He
19         can't come.  I am not trying to be
20         difficult.
21              MR. KESHAVARZ:  What is good
22         for you?  I only care about
23         calendaring.
24              MR. PASHKIN:  Do you want to do
25         the 14th so we can continue to try to
```

```
1                   J. DESSNER
2         get as much done as soon as possible?
3              MR. KESHAVARZ:  What time?
4              MR. PASHKIN:  He said between
5         9:30 and 2:00.  Obviously if we can
6         start at 9:30 just in the context of
7         trying to get, you know, as much in
8         as possible.
9              MR. KESHAVARZ:  Do we have an
10        agreement to take his deposition at
11        9:30 on the 17th?
12             MR. PASHKIN:  Yes.  Fine.
13             MR. KESHAVARZ:  We have an
14        agreement.  Mr. Kavulich's deposition
15        in the Morales case will take place
16        on the 17th at 9:30 in my office.
17        His availability is between 9:30 and
18        2:00.
19             MR. PASHKIN:  He has a child
20        care issue.
21             MR. KESHAVARZ:  As to the
22        deposition of the landlord in Prage,
23        can we take the landlord after the
24        deposition of Mr. Kavulich on 17th?
25             MR. PASHKIN:  I don't know.  I
```

```
 1                    J. DESSNER
 2         would have to speak to Mr. Dessner
 3         and set it for Thursday at 1:00.  I
 4         will reach out to him.
 5             Right now Mr. Wasser is set up
 6         for Thursday at one.  So I mean like
 7         he was canceled once.  I will ask
 8         him.  You know, I do will do my best
 9         to get him here at 2:30 or 3:00, just
10         because Mr. Kavulich is going to go
11         until two o'clock on Morales.
12             MR. KESHAVARZ:  Okay let's say
13         2:45.  Okay.  Thank you.
14             (Whereupon, at 4:45 P.M., the
15         Examination of this witness was
16         concluded.)
17
18             o        o        o        o
19
20
21
22
23
24
25
```

1                    J. DESSNER

2              D E C L A R A T I O N

3

4        I hereby certify that having been

5    first duly sworn to testify to the truth, I

6    gave the above testimony.

7

8        I FURTHER CERTIFY that the foregoing

9    transcript is a true and correct transcript

10   of the testimony given by me at the time

11   and place specified hereinbefore.

12

13

14

15                    _____
                     JONATHAN DESSNER

16

17

18   Subscribed and sworn to before me

19   this _____ day of _____ 20___.

20

21       _____

22       NOTARY PUBLIC

23

24

25

```
1                    J. DESSNER
2               E X H I B I T S
3
4    PLAINTIFF'S EXHIBITS:
5
6    EXHIBIT    EXHIBIT                  PAGE
7    NUMBER     DESCRIPTION
8    1          Answer                   40
9    2          Debt recovery sheet      49
10
11        (Exhibits retained by Counsel.)
12
13               I N D E X
14
15   EXAMINATION BY                      PAGE
16   MR. KESHAVARZ                        4
17
18        QUESTIONS MARKED FOR RULINGS
19   PAGE LINE  QUESTION
20   4     19   What is your home address?
21   7     16   How many staff?  Are you going to
22             answer the question?
23   11    11   How many properties does
24             Metropolitan Property Services manage?
25
```

1                    J. DESSNER

2              C E R T I F I C A T E

3

4    STATE OF NEW YORK      )
                            :  SS.:
5    COUNTY OF KINGS        )

6

7         I, ELIZABETH FORERO, a Notary Public

8    for and within the State of New York, do

9    hereby certify:

10        That the witness whose examination is

11   hereinbefore set forth was duly sworn and

12   that such examination is a true record of

13   the testimony given by that witness.

14        I further certify that I am not

15   related to any of the parties to this

16   action by blood or by marriage and that I

17   am in no way interested in the outcome of

18   this matter.

19        IN WITNESS WHEREOF, I have hereunto

20   set my hand this 17th day of November,

21   2016.

22

23

24   _____
                ELIZABETH FORERO

25

J. DESSNER

## 1

**1** [4] - 3:17, 40:3, 40:9, 54:8
**11** [2] - 54:23
**11226** [1] - 2:11
**11241** [2] - 1:23, 2:6
**11435** [1] - 4:15
**11743** [1] - 2:17
**141-50** [2] - 4:14, 5:14
**14th** [1] - 50:25
**16** [3] - 1:22, 2:5, 54:21
**16-cv-02134-ALC** [1] - 1:6
**17th** [4] - 51:11, 51:16, 51:24, 55:20
**19** [1] - 54:20
**1:00** [1] - 52:3

## 2

**2** [3] - 49:12, 49:20, 54:9
**2015** [3] - 18:21, 18:25, 19:6
**2016** [2] - 1:12, 55:21
**20___** [1] - 53:19
**2300** [3] - 8:20, 9:5, 12:11
**255** [1] - 2:17
**2:00** [2] - 51:5, 51:18
**2:30** [1] - 52:9
**2:45** [1] - 52:13

## 3

**30** [1] - 3:16
**3:00** [1] - 52:9
**3:15** [1] - 1:13

## 4

**4** [2] - 54:16, 54:20
**40** [1] - 54:8
**49** [1] - 54:9
**4:45** [1] - 52:14

## 7

**7** [1] - 54:21
**775** [1] - 2:17

## 8

**8** [1] - 1:12
**85th** [2] - 4:14, 5:14
**885** [1] - 2:11

## 9

**9:30** [5] - 51:5, 51:6, 51:11, 51:16, 51:17

## A

**ability** [2] - 9:23, 25:12
**able** [5] - 25:4, 25:8, 30:16, 40:13, 40:20
**above** [1] - 53:6
**accept** [1] - 5:2
**accepting** [1] - 5:7
**account** [7] - 14:18, 35:2, 37:15, 44:22, 44:25, 45:14, 45:20
**accounting** [2] - 23:15, 24:4
**accounts** [1] - 36:16
**accuracy** [1] - 32:16
**accused** [1] - 36:25
**acting** [1] - 15:22
**action** [7] - 24:25, 25:2, 40:23, 45:24, 47:23, 48:17, 55:16
**actions** [3] - 19:11, 22:21, 47:5
**acts** [1] - 15:25
**adam** [1] - 4:12
**additional** [2] - 22:17, 30:17
**address** [13] - 4:13, 4:16, 4:17, 4:19, 4:21, 4:23, 4:24, 5:9, 5:11, 5:12, 5:23, 9:11, 54:20
**addresses** [2] - 8:23, 9:8
**administer** [1] - 3:11
**Affirmative** [1] - 40:19
**affirmative** [4] - 40:23, 41:4, 41:8, 41:18, 41:20, 41:23
**aforementioned** [2] - 40:4, 49:14
**after** [5] - 3:16, 24:4, 24:24, 24:25, 51:23
**against** [29] - 1:5, 5:3, 14:17, 14:19, 15:17, 19:4, 22:12, 22:24, 23:10, 25:6, 27:5, 35:11, 42:13, 42:18, 42:20, 42:25, 43:6, 43:24, 44:14, 44:19, 44:23, 45:10, 45:11, 45:24, 46:2, 46:7, 47:2, 47:24, 48:17
**agent** [1] - 15:22
**aggressive** [1] - 7:22
**ago** [3] - 4:17, 18:23, 22:15
**agreed** [1] - 27:2
**AGREED** [2] - 3:5, 3:20
**agreeing** [1] - 27:6
**agreement** [4] - 47:4, 50:11, 51:10, 51:14
**ahead** [1] - 6:19
**Ahmad** [1] - 1:22
**AHMAD** [2] - 2:4, 2:6

**allegation** [1] - 43:22
**allegations** [1] - 20:18
**alleged** [2] - 43:2, 43:24
**amount** [2] - 23:16, 25:5
**amounts** [2] - 22:2, 32:17
**AND** [2] - 3:5, 3:20
**another** [1] - 18:4
**Answer** [3] - 40:5, 40:10, 54:8
**answer** [26] - 6:25, 7:2, 7:17, 9:7, 9:9, 9:17, 9:19, 9:22, 9:24, 10:2, 10:6, 10:22, 11:2, 11:5, 11:22, 12:5, 13:21, 27:12, 27:17, 27:19, 40:13, 40:21, 41:15, 41:16, 46:21, 54:22
**answered** [6] - 6:18, 6:22, 7:3, 12:3, 13:23, 38:21
**answering** [1] - 10:17
**answers** [1] - 11:16
**anybody** [1] - 38:6
**anymore** [1] - 17:21
**anyone** [5] - 3:11, 16:9, 21:21, 26:4, 37:14
**anything** [6] - 15:7, 20:13, 22:19, 26:15, 45:2, 47:9
**anyway** [1] - 42:4
**anywhere** [1] - 50:5
**apartment** [6] - 8:17, 8:18, 8:21, 8:24, 9:5, 48:22
**appeal** [1] - 21:5
**Appearance** [1] - 1:20
**applicable** [1] - 40:25
**application** [1] - 47:8
**appropriate** [1] - 10:4
**approximately** [1] - 18:13
**are there** [2] - 8:24, 9:4
**arrears** [1] - 32:12
**ask** [4] - 9:11, 27:16, 40:11, 52:7
**asked** [3] - 6:17, 6:21, 38:21
**asking** [4] - 5:18, 8:2, 40:21, 41:9
**Associates** [11] - 12:9, 12:10, 12:24, 13:10, 13:17, 13:20, 14:5, 14:12, 14:13, 15:20, 49:23
**ASSOCIATES** [8] - 1:7, 1:7, 1:8, 1:16, 1:17, 2:15, 2:15, 2:16
**assuming** [2] - 22:15, 33:4
**attempt** [4] - 16:20, 23:9, 23:17, 43:3

**attempting** [6] - 36:12, 36:17, 36:21, 37:23, 42:19, 46:25
**attempts** [1] - 22:12
**attorney** [12] - 11:7, 24:18, 24:20, 39:16, 39:20, 40:10, 45:5, 46:14, 46:15, 46:16, 48:4, 50:8
**attorney's** [6] - 28:24, 29:7, 29:17, 30:11, 30:18, 31:6
**Attorneys** [2] - 2:4, 2:14
**attorneys** [5] - 16:12, 16:16, 17:10, 26:2, 46:19
**audits** [1] - 44:9
**authority** [1] - 19:6
**authorized** [1] - 3:11
**availability** [1] - 51:17
**Avenue** [5] - 2:11, 2:17, 8:20, 9:6, 12:11
**avoid** [1] - 44:6
**aware** [2] - 25:3, 44:18
**away** [1] - 19:25

## B

**back** [5] - 10:10, 10:13, 46:15, 47:19, 48:3
**backup** [1] - 41:10
**balance** [1] - 23:21
**balances** [1] - 34:15
**bank** [1] - 14:17
**banks** [1] - 36:15
**barred** [1] - 40:24
**basis** [8] - 21:10, 33:13, 40:22, 41:3, 41:7, 41:19, 41:22, 43:14
**before** [7] - 1:23, 3:11, 3:13, 18:21, 18:25, 49:25, 53:18
**behalf** [21] - 14:4, 16:2, 16:13, 27:6, 28:23, 29:6, 29:16, 32:8, 33:11, 36:13, 36:18, 37:8, 37:10, 37:16, 37:24, 38:17, 40:10, 42:14, 42:22, 44:7, 44:15
**believe** [10] - 12:25, 18:24, 18:25, 22:14, 23:3, 30:4, 31:10, 43:21, 44:20, 49:6
**best** [2] - 9:22, 52:8
**between** [5] - 3:6, 7:14, 34:5, 51:4, 51:17
**beyond** [1] - 46:18
**bills** [2] - 15:4, 15:6
**blood** [1] - 55:16
**both** [1] - 23:19
**Briarwood** [2] - 4:14, 5:14
**bring** [1] - 28:25

J. DESSNER

**bringing** [1] - 29:18
**Brooklyn** [3] - 1:23, 2:6, 2:11
**building** [2] - 11:16, 11:17
**buildings** [5] - 8:17, 8:19, 8:21, 8:25, 9:5
**business** [3] - 4:23, 17:18, 17:20
**BY** [5] - 2:6, 2:12, 2:18, 4:6, 54:15

## C

**calendaring** [1] - 50:23
**called** [3] - 4:2, 35:8, 50:3
**CAMBA** [1] - 2:9
**can you** [1] - 46:21
**can't** [2] - 50:18, 50:19
**canceled** [1] - 52:7
**cannot** [2] - 9:23, 12:4
**care** [3] - 14:24, 50:22, 51:20
**carrier** [3] - 38:12, 38:14, 38:18
**case** [13] - 21:8, 23:2, 23:3, 24:15, 25:17, 33:22, 35:18, 45:10, 46:9, 46:13, 49:5, 50:13, 51:15
**Case** [1] - 1:5
**cases** [10] - 19:24, 20:2, 20:7, 27:24, 42:2, 42:7, 43:12, 45:5, 48:20
**ceased** [3] - 17:18, 18:8, 19:17
**certainly** [1] - 24:19
**certification** [1] - 3:8
**certify** [3] - 53:4, 55:9, 55:14
**CERTIFY** [1] - 53:8
**chance** [1] - 40:15
**charge** [2] - 16:12, 30:6
**charges** [1] - 22:17
**check** [4] - 33:14, 33:21, 33:24
**checklist** [2] - 41:16, 41:18
**checks** [3] - 24:6, 24:8, 42:4
**child** [1] - 51:19
**chose** [2] - 11:19, 18:4
**Civil** [1] - 1:21
**claim** [6] - 19:5, 20:17, 20:22, 36:20, 38:23, 39:4
**claimed** [2] - 22:2, 32:17
**claims** [2] - 28:14, 41:13
**Clara** [1] - 22:24
**clear** [1] - 43:11
**CLERK** [1] - 2:7

**client** [4] - 9:19, 10:22, 16:21, 19:4
**client's** [2] - 14:17, 19:5
**co** [4] - 2:10, 22:23, 45:10, 47:24
**co-Counsel** [1] - 2:10
**co-debtor** [3] - 22:23, 45:10, 47:24
**collect** [26] - 15:17, 16:13, 16:20, 16:24, 18:8, 19:18, 22:12, 23:9, 23:18, 24:7, 32:9, 36:12, 36:17, 36:21, 37:6, 37:24, 38:8, 42:19, 43:3, 44:7, 44:23, 45:14, 45:20, 46:12, 47:2, 48:22
**collected** [1] - 37:17
**collecting** [6] - 15:4, 15:6, 23:5, 27:25, 37:16, 43:23
**collection** [13] - 29:5, 29:8, 29:15, 29:20, 29:22, 30:10, 31:13, 31:20, 32:2, 35:10, 42:13, 43:12, 45:23
**collections** [1] - 29:13
**collects** [5] - 30:24, 30:25, 31:7, 33:10, 44:14
**comfortable** [1] - 7:24
**coming** [1] - 45:16
**common** [1] - 37:24
**communicate** [7] - 31:19, 32:6, 34:8, 36:10, 37:25, 41:25, 46:5
**communicated** [1] - 34:10
**communication** [1] - 32:11
**communications** [1] - 38:14
**companies** [1] - 20:21
**company** [5] - 5:17, 13:14, 13:19, 20:18, 38:24
**compel** [1] - 9:10
**complaint** [2] - 42:13, 43:6
**complaints** [2] - 42:18, 42:25
**computer** [1] - 35:15
**concluded** [1] - 52:16
**consumer** [4] - 31:3, 37:22, 37:25, 38:2
**consumers** [1] - 42:19
**contact** [1] - 38:7
**contacts** [1] - 37:22
**contended** [1] - 37:15
**contends** [1] - 31:5
**context** [1] - 51:6
**continue** [1] - 50:25
**continued** [1] - 20:8
**continues** [1] - 20:4

**contract** [1] - 43:9
**copies** [3] - 44:13, 47:6, 48:19
**copy** [5] - 3:14, 3:17, 24:17, 39:15, 47:25
**corporate** [5] - 13:8, 13:12, 13:16, 14:3, 41:12
**correct** [12] - 15:23, 16:4, 18:9, 23:6, 26:16, 45:6, 45:11, 45:14, 45:21, 49:9, 49:10, 53:9
**costs** [3] - 26:16, 26:19, 26:25
**Counsel** [2] - 2:10, 54:11
**counsel** [2] - 3:6, 3:17
**COUNTY** [1] - 55:5
**course** [4] - 17:7, 22:18, 31:20, 48:21
**COURT** [1] - 1:2
**court** [5] - 12:7, 48:2, 48:16, 48:19, 49:8
**Court** [3] - 1:22, 2:5, 3:13
**cover** [2] - 21:3, 26:24
**coverage** [3] - 20:11, 20:25, 38:19
**credit** [1] - 23:11
**currently** [2] - 17:10, 25:5
**cut** [1] - 33:14

## D

**DATE** [1] - 1:12
**date** [6] - 18:12, 19:16, 24:24, 25:2, 40:7, 49:17
**day** [8] - 6:5, 6:10, 14:25, 53:19, 55:20
**day-to-day** [3] - 6:5, 6:10, 14:25
**days** [1] - 3:16
**deal** [1] - 36:15
**deals** [1] - 25:25
**Debt** [1] - 54:9
**debt** [9] - 15:17, 22:12, 23:18, 37:23, 38:7, 43:3, 46:25, 49:15, 49:22
**debtor** [3] - 22:23, 45:10, 47:24
**debts** [4] - 16:24, 19:18, 36:16, 44:14
**decide** [2] - 16:19, 31:12
**decision** [1] - 21:5
**deducted** [1] - 29:7
**defend** [3] - 21:8, 21:15, 26:19
**DEFENDANTS** [1] - 1:9
**defendants** [1] - 21:22
**Defendants** [2] - 1:15, 2:14
**defending** [1] - 26:16

**Defense** [1] - 40:20
**defense** [4] - 40:23, 41:4, 41:8, 41:20
**defenses** [3] - 41:14, 41:19, 41:23
**demand** [7] - 25:16, 25:21, 26:7, 26:9, 26:13, 30:10, 38:18
**denied** [2] - 20:25, 38:25
**deposing** [1] - 7:25
**deposition** [9] - 3:8, 3:9, 3:14, 7:22, 50:12, 51:10, 51:14, 51:22, 51:24
**DEPOSITION** [1] - 1:15
**DESCRIPTION** [1] - 54:7
**designated** [1] - 41:12
**Dessner** [2] - 4:10, 52:2
**DESSNER** [2] - 1:19, 53:15
**determinations** [1] - 32:24
**determine** [3] - 25:4, 25:8, 25:13
**determining** [1] - 34:15
**did he** [2] - 19:6, 27:20
**did you** [17] - 18:18, 18:20, 19:25, 20:17, 20:22, 21:5, 22:7, 22:10, 26:7, 27:11, 27:16, 38:16, 39:15, 44:22, 44:24, 45:25, 46:24
**different** [2] - 32:13, 46:11
**difficult** [1] - 50:20
**directly** [2] - 46:6, 47:18
**discuss** [1] - 24:19
**discussed** [1] - 30:13
**discussing** [1] - 32:13
**discussion** [1] - 26:23
**DISTRICT** [2] - 1:2, 1:2
**divided** [1] - 30:19
**do you** [51] - 5:13, 5:16, 5:24, 6:9, 6:15, 6:19, 12:19, 13:5, 18:13, 21:2, 21:13, 21:21, 21:25, 23:2, 24:14, 24:22, 24:25, 25:15, 28:16, 28:23, 29:24, 30:9, 30:18, 31:18, 32:15, 32:19, 33:6, 34:8, 34:13, 34:16, 34:17, 34:23, 36:10, 36:15, 37:9, 38:13, 39:12, 39:24, 41:3, 41:7, 41:19, 41:22, 42:21, 43:22, 44:17, 48:6, 48:9, 48:15, 48:17, 49:20, 50:24
**document** [6] - 19:15, 39:12, 39:13, 39:16, 49:21, 49:25
**documents** [8] - 22:10, 24:22, 24:25, 32:13,

J. DESSNER

39:21, 46:24, 48:15, 48:18
**does he** [3] - 33:3, 33:14, 33:23
**does it** [2] - 46:15, 47:19
**does that** [1] - 14:22
**dollars** [7] - 30:6, 30:11, 30:17, 31:4, 31:6, 31:7, 31:9
**down** [2] - 40:18, 41:16
**due** [3] - 25:5, 32:17, 34:15
**duly** [3] - 4:3, 53:5, 55:11

## E

**effect** [2] - 3:12, 3:15
**eight** [2] - 40:19, 41:5
**electronic** [4] - 33:24, 34:4, 34:19, 34:20
**ELIZABETH** [2] - 55:7, 55:24
**Elizabeth** [1] - 1:24
**else's** [1] - 37:10
**email** [2] - 34:8, 34:10
**entail** [1] - 14:23
**entails** [1] - 14:24
**entered** [2] - 42:10, 45:9
**entirely** [1] - 30:20
**entitled** [1] - 31:5
**ESQ** [3] - 2:6, 2:12, 2:18
**everyday** [1] - 35:24
**evictions** [1] - 16:17
**exactly** [1] - 47:15
**Examination** [1] - 52:15
**examination** [1] - 55:10, 55:12
**EXAMINATION** [2] - 4:6, 54:15
**examined** [1] - 4:5
**example** [4] - 14:3, 30:5, 31:2, 44:10
**except** [1] - 3:21
**executing** [1] - 37:2
**exemption** [1] - 19:5
**EXHIBIT** [2] - 54:6
**Exhibit 1** [2] - 40:6, 40:16
**Exhibit 2** [2] - 49:16, 50:5
**EXHIBITS** [1] - 54:4
**Exhibits** [1] - 54:11
**exist** [1] - 36:22
**existent** [1] - 37:6
**existing** [3] - 20:2, 32:21, 37:2
**expecting** [1] - 26:18
**expiration** [1] - 40:24

## F

**F/K/A** [3] - 1:8, 1:17, 2:16
**fact** [2] - 36:22, 44:18
**far** [1] - 7:25
**FDPCA** [1] - 26:19
**Federal** [1] - 1:21
**federal** [4] - 10:3, 10:6, 10:25, 11:25
**fee** [1] - 28:24
**fees** [8] - 29:7, 29:17, 29:19, 30:11, 30:18, 30:24, 30:25, 31:6
**fifteen** [2] - 31:7, 31:8
**figure** [2] - 35:19, 47:17
**figures** [1] - 45:23
**file** [14] - 16:12, 18:7, 27:12, 31:2, 31:13, 34:19, 34:20, 46:14, 47:17, 47:22, 48:7, 48:10, 48:14
**filed** [8] - 19:3, 19:4, 29:5, 29:15, 35:10, 40:10, 44:13, 48:16
**files** [2] - 28:23, 32:8
**filing** [5] - 3:7, 23:23, 24:5, 27:19, 30:6
**fine** [2] - 41:17, 51:12
**firing** [1] - 15:11
**firm** [7] - 17:19, 18:4, 18:6, 44:10, 46:10, 46:11
**firms** [2] - 16:23, 36:25
**first** [3] - 4:3, 44:17, 53:5
**five** [4] - 30:6, 30:10, 30:17, 31:5
**Flatbush** [1] - 2:11
**follows** [1] - 4:5
**FOR** [1] - 54:18
**force** [3] - 3:15, 9:23, 12:4
**foregoing** [1] - 53:8
**Forero** [1] - 1:24
**FORERO** [2] - 55:7, 55:24
**form** [4] - 3:21, 6:23, 19:6, 48:12
**former** [1] - 46:19
**forth** [1] - 55:11
**forward** [7] - 8:3, 33:10, 38:2, 44:22, 44:24, 45:2, 48:7
**forwarded** [1] - 45:13
**fourth** [1] - 41:20
**frankly** [1] - 7:23
**full** [2] - 48:10, 48:14
**FURTHER** [1] - 3:20, 53:8
**further** [1] - 55:14

## G

**Garden** [2] - 12:10, 15:19
**GARDENS** [6] - 1:7, 1:8, 1:16, 1:17, 2:15, 2:16
**Gardens** [9] - 12:9, 12:20, 12:24, 13:9, 13:17, 13:20, 14:5, 14:11, 14:12
**Gary** [1] - 19:10
**GARY** [2] - 1:7, 2:15
**gave** [2] - 4:16, 53:6
**general** [2] - 12:20, 46:20
**generally** [3] - 18:7, 31:24, 32:7
**generate** [4] - 34:23, 35:4, 35:20, 35:23
**give** [5] - 4:24, 34:17, 42:4, 45:17, 46:16
**given** [3] - 35:14, 53:10, 55:13
**giving** [7] - 4:20, 5:10, 8:22, 9:7, 19:23, 32:11, 41:10
**goes** [2] - 46:14, 48:3
**good** [1] - 50:21
**guess** [1] - 21:19
**Gutman** [6] - 45:7, 46:5, 47:11, 47:17, 47:19, 48:6
**gutman** [1] - 47:21
**guttman** [1] - 17:17

## H

**hand** [2] - 22:22, 55:20
**handling** [1] - 42:3
**happened** [1] - 37:10
**have you** [8] - 16:23, 17:18, 22:4, 34:10, 36:5, 38:10, 40:15, 49:24
**haven't** [2] - 26:15, 39:19
**he's** [1] - 42:2
**held** [1] - 1:21
**HEREBY** [1] - 3:5
**hereby** [2] - 53:4, 55:9
**herein** [1] - 3:7
**hereinbefore** [2] - 53:11, 55:11
**hereunto** [1] - 55:19
**hiring** [2] - 15:11, 15:12
**home** [7] - 4:17, 4:19, 4:20, 4:24, 5:10, 5:22, 54:20
**hostile** [2] - 8:7, 8:10
**housing** [2] - 22:25, 45:10
**how did** [1] - 16:19
**how is** [1] - 33:18
**how many** [11] - 7:10, 7:16, 10:16, 11:11, 16:23, 17:8, 17:10, 20:21, 27:24,

54:21, 54:23
**how often** [1] - 33:9
**hundred** [4] - 30:6, 30:11, 30:17, 31:6, 31:7, 31:9
**Huntington** [2] - 2:17

## I

**identification** [3] - 40:6, 49:13, 49:17
**imagine** [2] - 25:14, 43:5
**IN** [1] - 55:19
**Inc** [2] - 12:17, 12:19
**INC** [4] - 1:8, 1:18, 2:9, 2:16
**inception** [2] - 23:17, 23:20
**indemnification** [1] - 25:22
**indemnify** [2] - 25:16, 26:8
**independently** [1] - 32:24
**index** [1] - 48:3
**inform** [2] - 42:17, 42:24
**information** [6] - 24:2, 47:7, 47:12, 47:15, 47:16, 48:24
**informed** [1] - 27:18
**insist** [2] - 27:11, 27:15
**insistence** [1] - 27:21
**instant** [1] - 40:23
**instruct** [5] - 9:18, 10:2, 10:22, 10:24, 11:22
**instructed** [3] - 6:25, 11:23, 12:2
**instruction** [1] - 9:17
**insurance** [7] - 20:11, 20:18, 20:21, 38:12, 38:14, 38:18, 38:24
**interest** [1] - 13:5
**interested** [1] - 55:17
**interface** [1] - 34:5
**IS** [2] - 3:5, 3:20
**is that** [14] - 4:17, 5:17, 14:8, 14:13, 15:22, 16:4, 17:25, 18:9, 29:9, 44:2, 45:18, 46:9, 47:13, 50:4
**is there** [3] - 19:15, 34:4, 42:16
**is this** [2] - 7:21, 17:22
**issue** [3] - 12:6, 14:16, 51:20
**IT** [2] - 3:5, 3:20

## J

**JAMES** [3] - 1:3, 2:5, 2:10

JESSICA [1] - 2:7
job [1] - 7:6
JONATHAN [2] - 1:18, 53:15
  Jonathan [1] - 4:10
  Judge [1] - 3:13
  judgement [7] - 23:5, 24:12, 37:7, 42:10, 43:24, 43:25, 46:2
  judgements [1] - 36:11
  judgment [14] - 14:18, 22:24, 23:10, 25:5, 27:4, 27:6, 32:21, 36:22, 37:2, 43:24, 44:18, 44:24, 45:9, 46:12

## K

Kavulich [75] - 15:17, 16:7, 16:20, 17:14, 18:18, 19:10, 19:17, 21:7, 21:15, 21:19, 21:22, 22:5, 22:11, 23:9, 23:15, 25:16, 26:7, 26:24, 27:5, 27:12, 27:16, 27:18, 27:24, 27:25, 28:12, 28:16, 28:23, 29:6, 29:7, 29:12, 29:16, 29:17, 31:13, 31:19, 32:2, 32:16, 32:20, 32:23, 33:9, 34:11, 34:14, 36:12, 36:17, 36:21, 37:16, 37:23, 38:7, 41:25, 42:17, 42:24, 42:25, 43:2, 43:12, 43:23, 44:5, 44:23, 44:24, 45:3, 45:4, 45:14, 45:16, 45:19, 45:23, 46:2, 46:6, 46:24, 47:13, 47:18, 48:7, 49:5, 49:8, 49:23, 50:4, 51:24, 52:10
  KAVULICH [4] - 1:7, 1:7, 2:15, 2:15
  Kavulich's [7] - 17:19, 18:6, 22:11, 34:5, 38:2, 50:12, 51:14
  keep [1] - 21:25
  KESHAVARZ [26] - 2:4, 2:6, 4:7, 4:25, 5:8, 5:21, 7:19, 9:10, 9:16, 9:25, 10:10, 10:21, 11:21, 12:6, 40:2, 49:11, 50:7, 50:10, 50:16, 50:21, 51:3, 51:9, 51:13, 51:21, 52:12, 54:16
  Keshavarz [1] - 1:22
  KINGS [1] - 55:5
  know [68] - 10:9, 12:18, 12:19, 12:22, 13:5, 13:10, 14:20, 19:8, 19:9, 19:10, 21:2, 21:13, 21:17, 21:18, 21:20, 21:21, 21:24, 22:21, 23:2, 23:7, 24:14, 24:16, 25:7, 25:15, 25:20,

25:23, 26:5, 28:5, 28:9, 28:12, 28:15, 28:16, 30:9, 30:18, 33:4, 37:9, 38:15, 38:22, 38:23, 39:3, 39:5, 39:6, 39:24, 39:25, 41:3, 41:7, 41:15, 41:17, 41:19, 43:8, 43:22, 44:17, 45:8, 45:12, 46:8, 46:21, 46:22, 47:3, 48:2, 48:5, 48:6, 48:8, 48:22, 49:20, 50:15, 51:7, 51:25, 52:8
  knowledge [3] - 36:24, 37:14, 46:19
  KOVEN [1] - 2:12

## L

landlord [6] - 24:24, 25:2, 29:8, 29:13, 51:22, 51:23
  landlord-tenant [4] - 24:24, 25:2, 29:8, 29:13
  landlord/tenant [10] - 22:21, 45:5, 46:10, 46:13, 47:5, 47:23, 48:10, 48:14, 48:16, 48:20
  Law [1] - 1:22
  law [4] - 36:25, 37:18, 46:10, 46:11
  LAW [2] - 2:4, 2:7
  laws [1] - 44:6
  lawsuit [24] - 7:15, 14:7, 17:23, 19:3, 20:19, 21:16, 21:23, 22:25, 23:24, 24:5, 26:16, 26:20, 27:12, 27:17, 29:5, 30:7, 31:5, 35:10, 38:11, 39:22, 40:11, 44:20, 46:7, 49:3
  lawsuits [11] - 16:13, 18:7, 22:20, 28:18, 29:15, 30:10, 31:14, 31:20, 32:3, 32:14, 44:13
  lease [2] - 22:16, 47:4
  ledger [16] - 21:25, 22:3, 22:4, 22:7, 22:16, 23:11, 24:11, 34:14, 34:17, 34:24, 35:2, 35:15, 35:20, 35:23, 46:23, 50:4
  legal [3] - 30:24, 30:25, 43:9
  LEGAL [1] - 2:9
  let's [4] - 7:10, 8:12, 11:8, 52:12
  letter [1] - 19:20
  limit [1] - 11:15
  limitations [1] - 40:25
  LINE [1] - 54:19
  listed [2] - 13:4, 41:5
  LLC [1] - 12:25
  LLP [5] - 12:9, 13:4,

13:10, 13:17, 14:12
  long [1] - 36:5
  longer [1] - 27:23
  look [1] - 25:10
  looks [1] - 49:22
  LP [3] - 1:7, 1:16, 2:16

## M

manage [2] - 11:12, 54:24
  managed [1] - 20:5
  management [7] - 13:13, 13:19, 14:22, 35:6, 35:7, 35:25, 36:3
  Management [5] - 35:8, 35:17, 35:23, 36:3, 36:6
  manages [2] - 8:16, 13:20
  manner [2] - 31:22, 37:17
  mark [5] - 5:21, 7:19, 12:6, 40:2, 49:11
  marked [4] - 40:5, 40:9, 49:15, 49:20
  MARKED [1] - 54:18
  marriage [1] - 55:16
  marshal [1] - 36:11
  matter [2] - 29:13, 55:18
  matters [1] - 29:14
  mean [11] - 6:19, 14:11, 15:8, 34:16, 34:18, 35:5, 41:9, 42:21, 45:18, 48:14, 52:6
  mechanism [1] - 44:6
  MELISSA [1] - 2:12
  Metropolitan [31] - 5:20, 5:24, 6:3, 8:14, 9:12, 11:12, 12:13, 15:15, 15:21, 16:3, 16:6, 16:14, 18:20, 19:12, 19:16, 20:5, 20:9, 25:25, 26:10, 28:17, 42:3, 42:17, 42:23, 42:24, 43:3, 43:13, 44:4, 44:15, 46:16, 47:20, 54:24
  Micro [5] - 35:8, 35:16, 35:22, 36:3, 36:5
  middle [1] - 4:11
  Mintz [8] - 17:17, 45:7, 46:5, 47:12, 47:18, 47:20, 47:21, 48:6
  misconduct [1] - 43:2
  Miss [5] - 22:24, 23:5, 23:10, 24:23, 25:6
  MITCHELL [2] - 2:14, 2:18
  moment [3] - 4:16, 11:6, 25:7
  money [2] - 33:18, 45:17
  monies [1] - 33:10

monthly [1] - 33:12
  MOODY [1] - 2:7
  moraler [1] - 45:11
  morales [18] - 15:18, 22:2, 22:13, 22:17, 24:23, 34:11, 35:11, 43:25, 44:19, 44:23, 45:20, 45:24, 46:3, 46:7, 47:2, 47:19, 48:10, 48:17
  Morales [5] - 47:13, 47:24, 50:12, 51:15, 52:11
  MORALES [3] - 1:3, 2:5, 2:10
  morales' [1] - 45:13
  motions [1] - 49:3
  move [2] - 8:12, 9:10
  MR [80] - 4:7, 4:25, 5:4, 5:8, 5:21, 6:17, 6:21, 7:12, 7:19, 9:2, 9:10, 9:14, 9:16, 9:20, 9:25, 10:3, 10:10, 10:21, 10:24, 11:8, 11:13, 11:21, 11:23, 12:6, 13:2, 14:6, 14:14, 16:25, 17:5, 17:11, 18:2, 18:15, 20:14, 21:9, 25:18, 27:8, 27:13, 28:3, 28:10, 28:19, 29:2, 29:10, 30:2, 30:21, 31:15, 33:15, 33:19, 33:25, 35:12, 36:7, 37:3, 37:11, 37:19, 38:4, 38:20, 39:8, 40:2, 43:15, 43:19, 46:17, 48:11, 49:11, 50:7, 50:9, 50:10, 50:14, 50:16, 50:18, 50:21, 50:24, 51:3, 51:4, 51:9, 51:12, 51:13, 51:19, 51:21, 51:25, 52:12, 54:16
  Mr [89] - 15:16, 15:17, 16:7, 16:20, 17:14, 18:6, 18:18, 19:17, 21:7, 21:15, 21:19, 21:22, 22:2, 22:5, 22:8, 22:11, 22:12, 22:17, 23:9, 23:14, 24:23, 26:23, 27:5, 27:11, 27:16, 27:18, 27:24, 27:25, 28:12, 28:16, 28:22, 29:6, 29:7, 29:12, 29:16, 31:13, 31:19, 32:2, 32:16, 32:20, 32:23, 33:9, 34:5, 34:11, 34:14, 35:11, 36:17, 36:21, 37:23, 38:2, 38:7, 38:9, 41:25, 42:16, 43:25, 44:19, 44:23, 45:3, 45:4, 45:11, 45:13, 45:16, 45:19, 45:20, 45:23, 45:24, 45:25, 46:3, 46:7, 46:24, 47:2, 47:12, 47:13, 47:18, 47:24, 48:10, 48:17, 49:5, 49:7, 50:4, 50:11, 51:14, 51:24, 52:2,

52:5, 52:10
**multitude** [1] - 15:8

## N

**name** [4] - 4:8, 4:11, 5:17, 36:2
**need** [3] - 5:6, 6:8, 7:23
**needed** [1] - 32:14
**never** [1] - 19:21
**NEW** [2] - 1:2, 55:4
**next** [2] - 8:12, 50:15
**non** [2] - 37:2, 37:6
**non-existent** [1] - 37:6
**non-existing** [1] - 37:2
**Notary** [3] - 1:24, 4:4, 55:7
**NOTARY** [1] - 53:22
**nothing** [1] - 50:9
**Notice** [1] - 1:20
**November** [1] - 55:20
**november** [1] - 1:12
**number** [3] - 22:15, 48:3, 49:6
**NUMBER** [1] - 54:7

## O

**o'clock** [1] - 52:11
**oath** [1] - 3:12
**object** [3] - 6:23, 9:2, 14:14
**objection** [42] - 7:12, 9:14, 10:5, 11:3, 11:13, 12:3, 13:2, 16:25, 17:5, 17:11, 18:2, 18:15, 19:5, 20:14, 21:9, 21:10, 25:18, 27:8, 27:13, 28:3, 28:10, 28:19, 29:2, 29:10, 30:2, 30:21, 31:15, 33:15, 33:19, 33:25, 35:12, 36:7, 37:3, 37:11, 37:19, 38:4, 38:20, 39:8, 43:15, 43:19, 46:17, 48:11
**objections** [2] - 3:21, 6:24
**obligated** [1] - 43:7
**obligation** [2] - 9:22, 43:9
**obligations** [1] - 11:24
**obtain** [1] - 30:16
**obviously** [1] - 51:5
**occur** [1] - 18:11
**OF** [4] - 1:2, 2:4, 55:4, 55:5
**offhand** [1] - 45:12
**office** [5] - 32:5, 34:5, 38:3, 45:16, 51:16
**Office** [1] - 1:22
**OFFICE** [1] - 2:4

**often** [1] - 32:5
**okay** [5] - 14:10, 14:13, 40:14, 52:12, 52:13
**once** [1] - 52:7
**operation** [1] - 6:6
**operations** [1] - 6:10
**original** [2] - 3:9, 3:17
**outcome** [1] - 55:17
**outside** [2] - 11:7, 15:12
**outstanding** [2] - 23:22, 32:12
**oversee** [3] - 6:5, 6:9, 7:6
**owed** [2] - 22:2, 23:16
**owes** [2] - 31:3, 45:17
**owner** [1] - 12:23
**owners** [1] - 18:19
**ownership** [2] - 12:11, 13:5
**owns** [1] - 13:10

## P

**P.C** [2] - 1:7, 2:15
**P.M** [2] - 1:13, 52:14
**page** [2] - 40:18, 41:5
**PAGE** [3] - 54:6, 54:15, 54:19
**paid** [2] - 26:15, 29:17
**paper** [2] - 34:18, 34:22
**papers** [1] - 49:8
**paperwork** [1] - 25:11
**Park** [1] - 2:17
**part** [2] - 35:6, 35:24
**participate** [2] - 30:23, 30:25
**particular** [2] - 11:16, 11:17
**parties** [2] - 3:7, 55:15
**partner** [1] - 12:20
**Partnership** [1] - 12:21
**party** [1] - 5:5
**Pashkin** [2] - 22:8, 38:9
**PASHKIN** [58] - 2:14, 2:18, 5:4, 6:17, 6:21, 7:12, 9:2, 9:14, 9:20, 10:3, 10:24, 11:8, 11:13, 11:23, 13:2, 14:6, 14:14, 16:25, 17:5, 17:11, 18:2, 18:15, 20:14, 21:9, 25:18, 27:8, 27:13, 28:3, 28:10, 28:19, 29:2, 29:10, 30:2, 30:21, 31:15, 33:15, 33:19, 33:25, 35:12, 36:7, 37:3, 37:11, 37:19, 38:4, 38:20, 39:8, 43:15, 43:19, 46:17, 48:11, 50:9, 50:14, 50:18, 50:24, 51:4, 51:12, 51:19, 51:25
**pass** [1] - 50:7
**passively** [1] - 8:9

**pay** [4] - 26:19, 27:6, 28:24, 29:7
**paying** [5] - 15:4, 15:6, 21:7, 21:15, 21:21
**payment** [2] - 30:16, 50:3
**payments** [5] - 23:4, 23:8, 23:12, 24:4, 24:12
**people** [2] - 32:11, 45:17
**percentage** [3] - 29:21, 29:25, 43:14
**person** [1] - 16:11
**personal** [1] - 47:7
**personally** [1] - 5:3
**phone** [3] - 31:21, 31:25, 32:4
**physical** [2] - 34:18, 34:21
**physically** [2] - 12:4, 33:23
**piece** [2] - 34:18, 34:21
**place** [4] - 44:2, 44:6, 51:15, 53:11
**PLAINTIFF** [1] - 1:4
**Plaintiff** [3] - 1:19, 2:4, 2:10
**PLAINTIFF'S** [1] - 54:4
**Plaintiff's** [6] - 40:3, 40:5, 40:9, 49:12, 49:16, 49:20
**Please** [1] - 4:8
**please** [1] - 49:12
**pocket** [1] - 21:8
**policy** [1] - 21:4
**position** [2] - 13:25, 14:2
**possession** [3] - 39:13, 48:9, 48:18
**possible** [2] - 51:2, 51:8
**Potter** [5] - 22:25, 23:5, 23:10, 24:23, 25:6
**Prage** [1] - 51:22
**present** [1] - 46:20
**president** [1] - 6:2
**pretty** [2] - 8:2, 15:14
**previous** [1] - 22:20
**previously** [1] - 47:5
**printed** [1] - 35:15
**prior** [3] - 27:23, 46:14, 48:4
**privilege** [1] - 21:11
**probably** [3] - 28:7, 33:12, 47:4
**Procedure** [1] - 1:21
**produce** [5] - 24:17, 24:20, 24:21, 44:13, 50:17
**produced** [2] - 24:15, 49:6, 49:7
**program** [6] - 34:24, 35:3, 35:6, 35:7, 35:25, 36:3

**Properties** [1] - 15:16
**properties** [5] - 6:12, 9:12, 11:11, 20:5, 54:23
**property** [4] - 12:12, 14:22, 15:2, 18:19
**Property** [21] - 5:20, 5:25, 6:3, 8:14, 11:12, 12:14, 15:21, 16:3, 16:6, 16:14, 18:20, 19:12, 19:16, 20:5, 20:10, 25:25, 26:10, 28:17, 42:3, 42:17, 54:24
**provide** [10] - 5:8, 22:7, 22:10, 23:21, 23:25, 39:15, 39:21, 46:24, 47:12, 50:4
**provided** [4] - 22:4, 24:3, 45:19, 45:22
**provides** [1] - 23:14
**providing** [2] - 5:22, 27:23
**PUBLIC** [1] - 53:22
**Public** [3] - 1:24, 4:4, 55:7
**pull** [1] - 19:25
**pursuant** [1] - 1:19
**pursue** [1] - 32:14
**puts** [1] - 30:9

## Q

**question** [19] - 7:2, 7:3, 7:17, 8:13, 9:4, 9:9, 9:18, 10:4, 10:7, 10:11, 10:13, 10:18, 10:23, 11:15, 12:2, 12:5, 13:21, 13:24, 54:22
**QUESTION** [1] - 54:19
**questions** [6] - 8:3, 8:5, 11:2, 40:12, 40:21, 41:10
**QUESTIONS** [1] - 54:18

## R

**raising** [2] - 8:6, 8:11
**reach** [1] - 52:4
**read** [3] - 10:10, 10:13, 41:10
**reason** [1] - 33:6
**recall** [13] - 16:22, 17:3, 17:9, 18:5, 18:12, 18:13, 18:22, 19:2, 22:14, 29:24, 31:17, 34:3, 38:6
**received** [3] - 23:4, 23:8, 24:4
**recess** [1] - 11:9
**record** [3] - 4:9, 9:21, 55:12
**records** [2] - 25:9, 25:13
**recovery** [3] - 49:15, 49:22, 54:9

**referred** [1] - 10:12
**referred-to** [1] - 10:12
**reflect** [1] - 19:16
**reflected** [1] - 50:5
**reflecting** [1] - 24:11
**regarding** [13] - 20:18, 22:11, 24:23, 32:2, 32:7, 34:11, 36:11, 37:23, 38:10, 46:6, 46:25, 47:13, 47:18
**rejection** [2] - 39:6, 39:10
**related** [1] - 55:15
**relates** [1] - 14:7
**relation** [2] - 12:16, 39:21
**relationship** [2] - 7:13, 12:8
**relevance** [12] - 9:16, 11:14, 18:3, 18:16, 21:10, 25:19, 30:22, 37:20, 38:5, 38:21, 39:9, 46:18
**relevancy** [21] - 7:13, 9:3, 9:15, 13:3, 17:2, 17:6, 17:12, 20:15, 27:9, 27:14, 28:4, 28:11, 28:20, 29:3, 29:11, 30:3, 31:16, 33:16, 33:20, 34:2, 35:13, 36:8, 37:4, 37:12, 43:16, 43:20
**rely** [1] - 47:11
**remit** [1] - 31:8
**rendered** [2] - 22:24, 27:5
**rent** [22] - 15:4, 15:6, 16:13, 16:20, 18:8, 22:16, 28:22, 29:8, 30:7, 31:11, 31:13, 31:20, 32:9, 34:25, 35:6, 35:7, 35:10, 35:25, 36:2, 43:12, 44:7, 45:22
**repairs** [3] - 15:5, 15:7, 48:23
**report** [1] - 24:8
**Reporter** [3] - 10:14, 40:7, 49:18
**represent** [4] - 20:4, 21:22, 29:12, 45:25
**representations** [2] - 32:15, 32:19
**representative** [7] - 5:5, 13:9, 13:13, 13:16, 13:19, 14:4, 41:13
**represented** [2] - 28:13, 28:17
**representing** [1] - 18:19
**request** [1] - 26:13
**requested** [1] - 39:20
**require** [3] - 42:23, 44:4, 44:12
**required** [1] - 11:2

**requirement** [3] - 42:16, 42:22, 43:5
**reserved** [1] - 3:22
**residential** [3] - 6:12, 8:16, 8:18
**respective** [1] - 3:6
**responsibilities** [3] - 6:4, 7:7, 14:25
**restrained** [1] - 36:16
**restraint** [1] - 14:17
**result** [1] - 20:24
**retain** [3] - 16:16, 16:19, 31:12
**retained** [5] - 15:16, 15:20, 16:7, 16:24, 54:11
**retaining** [1] - 16:12
**review** [1] - 40:15
**right** [6] - 17:13, 19:13, 26:2, 26:3, 47:14, 52:5
**Road** [1] - 4:14
**ROSEWALL** [9] - 1:7, 1:8, 1:8, 1:16, 1:17, 1:18, 2:15, 2:16, 2:16
**Rosewall** [32] - 4:10, 12:9, 12:17, 12:19, 12:20, 12:23, 13:9, 13:16, 13:20, 14:5, 14:11, 14:12, 14:16, 14:18, 14:22, 15:19, 15:22, 16:2, 19:12, 20:10, 22:25, 25:15, 26:8, 27:5, 27:7, 27:25, 28:13, 28:23, 30:24, 31:4, 41:13
**Rosewall's** [3] - 40:22, 41:4, 41:8
**rosewell** [1] - 12:10
**rules** [4] - 10:4, 10:6, 10:25, 11:25
**Rules** [1] - 1:21
**ruling** [3] - 5:22, 7:20, 12:7
**RULINGS** [1] - 54:18
**run** [2] - 12:12, 22:17
**running** [2] - 6:12, 14:25

**S**

**same** [4] - 3:12, 3:15, 3:17, 14:15
**saying** [1] - 39:3
**scroll** [1] - 40:18
**sealing** [1] - 3:7
**Second** [1] - 40:19
**second** [2] - 40:22, 41:4
**Sedgwick** [3] - 8:20, 9:6, 12:11
**seen** [1] - 49:24
**send** [2] - 38:16, 38:17
**series** [1] - 40:12
**service** [4] - 3:16, 5:2, 5:7, 9:13

**Service** [1] - 15:16
**Services** [21] - 5:20, 5:25, 6:3, 8:15, 11:12, 12:14, 15:21, 16:3, 16:7, 16:14, 18:20, 19:13, 19:17, 20:6, 20:10, 25:25, 26:11, 28:17, 42:3, 42:18, 54:24
**SERVICES** [1] - 2:9
**several** [3] - 18:17, 18:23, 36:9
**share** [1] - 31:11
**sheet** [3] - 49:15, 49:23, 54:9
**short** [1] - 11:9
**show** [1] - 40:8
**showing** [1] - 49:19
**signed** [3] - 3:10, 3:12, 3:15
**single** [1] - 33:14
**sir** [1] - 49:21
**six** [1] - 33:13
**six-week** [1] - 33:13
**software** [2] - 35:17, 35:23
**someone** [3] - 16:3, 37:10, 38:17
**sometime** [1] - 50:14
**somewhere** [1] - 32:21
**soon** [1] - 51:2
**sort** [1] - 24:9
**SOUTHERN** [1] - 1:2
**speak** [3] - 31:25, 32:4, 52:2
**speaking** [2] - 31:24, 32:7
**specific** [2] - 6:8, 43:4
**specifically** [1] - 47:3
**specified** [1] - 53:11
**spoken** [1] - 38:10
**spreadsheet** [2] - 34:13, 34:19
**SS** [1] - 55:4
**staff** [8] - 6:11, 7:9, 7:11, 7:14, 7:16, 15:11, 54:21
**start** [1] - 51:6
**started** [1] - 45:23
**STATE** [1] - 55:4
**State** [3] - 1:25, 4:4, 55:8
**state** [1] - 4:8
**STATES** [1] - 1:2
**status** [1] - 42:7
**statute** [1] - 40:25
**steps** [1] - 44:5
**STIPULATED** [2] - 3:5, 3:20
**stipulation** [2] - 48:2, 49:9
**stipulations** [2] - 47:6,

48:20, 49:2
**stopped** [1] - 19:23
**straight** [1] - 8:2
**Street** [3] - 1:23, 2:5, 5:14
**subject** [3] - 10:5, 11:3, 12:3
**submit** [2] - 20:17, 20:22
**submitted** [4] - 38:24, 39:4, 39:7, 39:10
**submitting** [1] - 31:10
**subpoena** [3] - 5:2, 5:6, 5:11
**Subscribed** [1] - 53:18
**subsequent** [1] - 23:23
**suit** [5] - 28:25, 29:18, 31:3, 41:14, 43:23
**Suite** [1] - 2:17
**suits** [2] - 28:22, 32:8
**supervise** [4] - 6:11, 6:15, 6:20, 7:4
**supposed** [4] - 30:19, 31:8, 32:23, 46:11
**sure** [1] - 48:13
**sworn** [5] - 3:10, 4:3, 53:5, 53:18, 55:11
**system** [3] - 24:9, 35:15, 35:17

**T**

**take** [5] - 11:6, 44:5, 51:10, 51:15, 51:23
**taken** [4] - 1:19, 11:10, 15:25, 16:2
**taking** [1] - 14:24
**talk** [1] - 11:7
**talked** [1] - 45:15
**TD** [1] - 14:17
**tell** [5] - 32:25, 42:6, 42:9, 42:12, 43:7
**tenancy** [2] - 22:18, 23:6
**tenant** [5] - 24:24, 25:2, 29:8, 29:13, 47:8
**tenant's** [2] - 34:25, 48:21
**terminate** [2] - 18:18, 18:21
**terminated** [1] - 19:21
**termination** [1] - 19:20
**terms** [1] - 34:14
**testified** [1] - 4:5
**testify** [1] - 53:5
**testifying** [3] - 13:15, 13:18, 14:4
**testimony** [2] - 53:6, 53:10, 55:13
**thank** [1] - 52:13
**things** [3] - 15:9, 31:25,

J. DESSNER

48:23
**think** [4] - 13:23, 33:6, 33:21, 45:15
**third** [4] - 30:4, 31:8, 41:8, 43:18
**thirds** [1] - 31:11
**thousand** [1] - 31:4
**through** [2] - 18:20, 41:18
**Thursday** [3] - 50:17, 52:3, 52:6
**time** [9] - 3:22, 7:10, 17:7, 20:8, 35:5, 35:9, 44:17, 51:3, 53:10
**TIME** [1] - 1:13
**today** [1] - 14:4
**tone** [1] - 8:4
**total** [1] - 25:5
**transcript** [2] - 53:9
**transfer** [2] - 34:13, 34:16
**transferred** [1] - 33:18
**transpired** [1] - 44:21
**trial** [1] - 3:22
**true** [3] - 29:9, 53:9, 55:12
**truth** [1] - 53:5
**try** [1] - 50:25
**trying** [5] - 35:19, 38:8, 47:16, 50:19, 51:7
**two-thirds** [1] - 31:11
**type** [2] - 31:25, 49:24
**typical** [1] - 46:13
**typically** [1] - 46:9

**U**

**under** [5] - 10:3, 10:5, 10:25, 11:25, 21:4
**underlying** [1] - 49:3
**understand** [1] - 41:11
**understanding** [3] - 14:8, 14:9, 44:2
**UNITED** [1] - 1:2
**unsigned** [1] - 3:14
**usually** [2] - 47:25, 49:4

**V**

**valid** [1] - 32:21
**vendors** [1] - 15:12
**versa** [1] - 23:16
**vice** [2] - 6:2, 23:16
**vice-president** [1] - 6:2
**violated** [1] - 37:17
**violating** [1] - 44:6
**voice** [2] - 8:6, 8:11

**W**

**waived** [1] - 3:9

**want** [2] - 10:20, 50:24
**wants** [1] - 24:20
**was it** [1] - 15:15
**was that** [1] - 35:9
**was there** [2] - 19:20, 35:3
**Wasser** [1] - 52:5
**we'll** [1] - 24:21
**week** [2] - 33:13, 50:15
**what is** [11] - 4:13, 4:19, 10:8, 11:5, 12:8, 12:16, 14:2, 31:24, 40:22, 50:21, 54:20
**what was** [2] - 19:22, 20:24
**when did** [2] - 18:11, 35:16
**when you** [3] - 14:21, 34:17, 46:9
**WHEREOF** [1] - 55:19
**Whereupon** [5] - 10:12, 11:9, 40:4, 49:14, 52:14
**who is** [5] - 12:23, 16:11, 17:16, 21:13, 21:14
**why** [12] - 4:22, 10:19, 11:18, 13:8, 14:16, 17:25, 18:5, 21:2, 26:22, 30:9, 39:18, 39:24
**within** [2] - 3:8, 55:8
**without** [1] - 41:10
**WITNESS** [1] - 55:19
**witness** [11] - 1:18, 3:10, 3:16, 3:18, 4:3, 11:22, 11:24, 50:8, 52:15, 55:10, 55:13
**witness's** [1] - 46:18
**work** [5] - 5:11, 5:13, 5:16, 13:13, 20:8
**working** [1] - 20:7
**write** [1] - 33:23
**writing** [3] - 39:4, 39:7, 39:11
**written** [2] - 38:13, 38:18

**Y**

**years** [4] - 18:17, 18:23, 22:15, 36:9
**yes** [26] - 5:19, 10:15, 12:15, 15:24, 16:5, 16:15, 16:18, 18:10, 19:14, 20:16, 20:20, 22:3, 22:6, 24:10, 27:3, 27:10, 29:23, 33:2, 35:21, 36:4, 39:2, 40:17, 43:17, 44:3, 45:15, 51:12
**YORK** [2] - 1:2, 55:4
**York** [9] - 1:23, 1:25, 2:6, 2:11, 2:17, 4:4, 4:15, 5:15, 55:8

**you've** [1] - 23:4

**°**

**°** [4] - 52:18