USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#:
DATE FILED: 3/19/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
JAMES MORALES,

                            Plaintiff,

     -against-

KAVULICH & ASSOCIATES, P.C. ET AL,

                           Defendants.
------------------------------------------------------------------- X

16-CV-02134 (ALC) (JLC)

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., District Judge:**

Plaintiff James Morales brings this action against Defendants, asserting the common law tort of conversion and violations of both the Fair Debt Collection Practices Act ("FDCPA") and New York General Business Law § 349. Plaintiff now seeks summary judgment on two issues: (1) whether the issue of punitive damages should be submitted to the jury and (2) whether certain Defendants violated GBL § 349. For the reasons stated below, the motion is GRANTED and the issue of damages will be submitted to the jury.

## FACTS

This action arises out of Defendants' attempts to collect a non-existent judgment against Plaintiff.[1] In 2015, Morales's bank account was frozen by Defendant Kavulich & Associates, P.C. based on a restraining notice and execution signed by the law firm's principal, Gary Kavulich (together, "Kavulich Defendants" or "Kavulich") for a judgment that was never issued against Morales.

---

[1] The following facts are taken from Plaintiff's Local Rule 56.1 Statement and are undisputed unless otherwise noted.

1

Kavulich and his firm are "debt collector[s]" as defined in 15 U.S.C. § 1692(a)(6) as they regularly collect or attempt to collect, directly or indirectly, debts owed, due, or asserted to be due. Pl. 56.1 Stmt. ¶ 3. Kavulich files thousands of collection lawsuits in civil court and seeks to enforce putative debts obtained by others, primarily for rent. *Id.* ¶ 4. Defendants Rosewall Gardens Associates, LP f/k/a Rosewall Gardens Associates ("Rosewall LP") and Defendant Rosewall, a 5% general partner of Rosewall LP (collectively, "Rosewall") retained Kavulich and his firm to enforce a judgment. *Id.* ¶¶ 1-2. Rosewall had previously filed a petition in Bronx Housing Court against Morales and Clara Potter for back rent. *Id.* ¶¶ 15-16. No judgment was entered against Morales, although one was entered against Ms. Potter, who was the tenant and sole signatory to the renewal lease that covered the time period relevant to the petition. *Id.* ¶¶ 26-28, 30-31.

In March 2015, Kavulich sought to collect on a non-existent judgment against Morales by signing and later issuing an Information Subpoena with Restraining Notice ("Restraining Notice") on TD Bank, where Morales had accounts. *Id.* ¶ 44. The Restraining Notice stated that a judgment had been entered against Morales and that it was still due and owing, even though the amount of the debt appears to have been mostly, if not entirely, satisfied by executions against the actual judgment-debtor, Ms. Potter. *Id.* ¶¶ 45, 52. On April 16, 2015, TD Bank froze Morales's bank accounts, charged him a fee due to the restraint, and transferred money out of his account to pay the non-existent judgment. *Id.* ¶¶ 72, 74.

On or about April 27, 2015, Kavulich issued an Execution with Notice to Garnishee (the "Execution") to TD Bank. *Id.* ¶ 59. As with the restraining notice, the Execution falsely represented that a judgment had been entered against Morales, but incongruously represented that zero dollars was due on the judgment. *Id.* ¶¶ 60-61. Kavulich admitted to making a mistake

in signing and sending the Execution to TD Bank. *Id.* ¶ 62. He also admitted that he did not perform a meaningful attorney review prior to signing and serving the Restraining Notice and Execution. *Id.* ¶ 67. Morales eventually managed to get his bank account unfrozen both through legal assistance and his own efforts. *See generally* ¶¶ 73-109.

As a general practice, Gary Kavulich does not review the information in bank restraints, information subpoenas, as well as other similar documents and just mechanically signs them. *Id.* ¶¶ 9-10. From 2007 through 2015, whenever there was an execution involved in any of his cases, Kavulich did not keep track of the amount that was still owed on a judgment. *Id.* ¶ 114. Moreover, during that same time period, when issuing information subpoenas, Kavulich's computer system would automatically enter the amount due as the full judgment amount without crediting the debtor for any payments already received. *Id.* ¶ 125. This led to both the bank and consumer being misinformed about the amount and the bank restraining more than the amount to which Kavulich was entitled. *Id.* ¶ 126. Kavulich was aware of this problem with his computer but chose not to ensure that the amounts were accurate by fixing the computer system. *Id.* ¶ 128. Kavulich has previously enforced non-existent money judgments seven times (*see* ¶¶ 152-192) and also enforced already vacated judgments in seventeen other cases, sometimes holding on to a defendant's money long after the judgment had been vacated (*see* ¶¶ 225-237).

## DISCUSSION

"Summary judgment is warranted when, after construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact." *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009). Kavulich admitted to violating 15 U.S.C. §§ 1692e and 1692f of the FDCPA (Pl. 56.1 Stmt ¶

3

148) and that he and Rosewall committed conversion[2] (*id.* ¶ 150). The only two issues for the Court is 1) whether Kavulich's actions violate GBL § 349 and 2) whether Kavulich's conduct was egregious enough to allow a jury to decide the issue of punitive damages.

## GBL § 349

Morales argues that Kavulich violated § 349 by 1) enforcing non-existent judgments, 2) sending out Restraints and Executions that systematically fail to credit money paid on those judgments, and 3) falsely implying he had performed a meaningful review in signing and serving the Restraint and Execution. Defendants counter with two arguments. First, Kavulich's conduct falls under GBL § 601(8), which prohibits a creditor or an agent thereof from "claim[ing], or attempt[ing] or theaten[ing] to enforce a right with knowledge or reason to know that the right does not exist," and thus Morales cannot bring an action alleging a violation of § 349 based on those acts. Second, pointing to Morales's affidavit, he was not deceived or misled into believing there was a judgment against him and thus Kavulich's conduct was not materially misleading. Both arguments fail.

Regarding the first argument, Defendants rely on *Gomez v. Resurgent Capital Servs., LP*, 129 F. Supp. 3d 147 (S.D.N.Y. 2015) for the argument that a claim under § 601 precludes a claim under § 349, although they acknowledge that courts have disagreed with that decision. In *Gomez*, the court relying on *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001), held that defendant's conduct, which involved enforcing sewer service default judgments on time-barred debts and the "robo-signing" of the execution paperwork, was a violation of § 601 and thus precludes § 349. 129 F. Supp. 3d at 158-59. In *Conboy*, the Second Circuit held that a plaintiff

---

[2] Morales argues that the Kavulich Defendants were acting on behalf of Rosewall and within the scope of its agency as Rosewall's debt collection law firm when Kavulich intentionally restrained and garnished Morales's bank account and Rosewall is therefore vicariously liable for conversion. Defendants did not oppose this argument in their opposition memorandum and thus waives any argument challenging Rosewall's vicarious liability.

4

could not plead a claim for violation of § 349 by alleging that a violation of GBL § 601(6) necessarily constitutes a deceptive act under GBL § 349. 241 F.3d at 258. Other courts have found that the *Gomez* court's reading of *Conboy* is too broad and interpret, instead, *Conboy* to prohibit a claim for § 349 that is "solely a violation of Section 601." *Martinez v. LVNV Funding, LLC*, No. 14-CV-00677 (RRM) (ST), 2016 WL 5719718, at *3 (E.D.N.Y. Sept. 30, 2016); *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 163 F. Supp. 3d 109, 117 (S.D.N.Y. 2016) ("*Conboy* simply stands for the proposition that a § 601 claim is not necessarily a § 349 violation: it did not address conduct that supports claims under both § 601 and § 349."); *Scott v. Greenberg*, 15-CV-05527 (MKB), 2017 WL 1214441, at *19 – 20 (E.D.N.Y. Mar. 31, 2017) ("*Conboy* does not hold that a section 349 claim may never overlap with a section 601 claim, only that a plaintiff cannot successfully avoid the lack of a private right of action under section 601 by bringing a section 349 claim."). The Court finds *Gomez* unpersuasive and joins the weight of the authority in finding that a plaintiff can bring a § 349 claim based on conduct that is also violative of a § 601 claim, as long as the conduct meets all of the elements of a § 349 claim.

GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." GBL § 349(a). To assert a claim under § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Nick's Garage, Inc. v. Progressive Casualty Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017). Defendants contest only the second element of the § 349 claim, that Kavulich's conduct was materially misleading. Whether an act is materially misleading is defined objectively and looks to whether the act is likely to mislead a reasonable consumer acting

5

reasonably under the circumstances. *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). The reasonable consumer element may either present issues of fact or be resolved as a matter of law. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995) ("[The] test . . . may be determined as a matter of law or fact (as individual cases require).").

In response to the restraint of his account, Morales, confused, went to the bank to inquire about what was going on and sought legal assistance. *See* Morales Aff. ¶¶ 11-16. Defendants argue these actions demonstrate that he was not deceived or led into believing there was a judgment against him. *See* Morales Aff. ¶¶ 11-16. The argument is baseless; on the contrary, these undisputed facts establish that Morales was misled. After receiving an information subpoena or notice of the restraint, a reasonable consumer reading those documents would likely be misled into believing that the judgment exists and that the amount owed on these documents is accurate. *See Winslow v. Forster & Garbus, LLP*, CV 15-2996 (AYS), 2017 WL 6375744, at *13 (E.D.N.Y. Dec 13, 2017) (holding "as a matter of law[] that statement, viewed objectively, might lead a debtor to be confused as to the nature of the debt sought to be collected and is therefore misleading"); *Martinez*, 2016 WL 5719718, at *3 (finding that the practice of attempting to collect on previously vacated judgments "is deceptive on its face"); *Hunter v. Palisades Acquisition XVI, LLC*, 2017 WL 5513636, 2017 WL 5513636, at *8 (S.D.N.Y. Nov. 16, 2017) (finding that issuance of restraint based on vacated judgment is materially misleading). The undisputed facts are that Morales received a restraining notice and execution that misrepresented that he had a judgment entered against him. Accordingly, the information

subpoena and restraining notice were materially misleading, and Morales is entitled to summary judgment on his § 349 claim.[3]

## Punitive Damages

Morales argues that he is entitled to punitive damages under two different claims: conversion and § 349. However, it is well settled that that a plaintiff cannot recover twice for the same injury. *Wickham Contracting Co. v. Board of Education*, 715 F.2d 21, 28 (2d Cir. 1983). Because the law is unsettled as to whether punitive damages are available under § 349, *compare Bueno v. LR Credit 18, LLC*, 269 F. Supp. 3d 16, 23 (E.D.N.Y. 2017) (punitive damages available) *with Guzman v. Harris*, No. 16 Civ. 3499 (GBD)(RLE), 2017 WL 4386369, at *2 (S.D.N.Y. Sept. 29, 2017) (punitive damages not available), Morales's punitive damages claim for conversion may move forward.[4]

Punitive damages are available for conversion "where circumstances show that the conversion was accomplished with malice, insult, reckless and willful disregard for plaintiff's rights, or by other proof evidencing the aggravated nature of the act." *Caballero v. Anselmo*, 759 F. Supp. 144, 153 (S.D.N.Y. 1991); *see also Whitney v. Citibank N.A.*, 782 F.2d 1106, 1118 (2d Cir. 1986) (punitive damages available where "defendant's conduct amounts to such gross, wanton or willful fraud, dishonesty, or malicious wrongdoing as to involve a high degree of moral culpability"). The purpose of punitive damages is to "to deter the defendants from engaging in similar conduct in the future and to induce the victim to take action against the wrongdoer." *Whitney*, 782 F.2d at 1118.

---

[3] Morales will not be able to recover statutory damages under both the FDCPA and the GBL as that would violate the prohibition on double recovery for the same injury. *See Shepherd v. Law Offices of Cohen & Slamowitz, LLP*, 668 F. Supp. 2d 579, 582 (S.D.N.Y. 2009).
[4] Regardless, the standard for punitive damages under conversion and GBL § 349 is for all practical purposes the same. *See Home Ins. Co. v. American Home Prods.*, 75 N.Y.2d 196, 203-204, 551 N.Y.S.2d 481, 485, 550 N.E.2d 930, 934 (1990).

7

"Under New York law, the decision to award punitive damages and their amount are questions which primarily reside in the jury's discretion." *Racich v. Celotex Corp.*, 887 F.2d 393, 397 (2d Cir. 1989). Therefore, summary judgment on the issue of punitive damages is inappropriate where there is enough evidence to permit the jury to find that defendants acted with wanton and reckless or malicious intent. *See Karam v. County of Rensselaer, New York*, 1:13-cv-01018 (MAD/DJS), 2016 WL 51252, at *23 (N.D.N.Y. Jan 4, 2016).

Kavulich contends that his conduct does not meet the standard for an award of punitive damages as a matter of law. Here, Kavulich repeatedly enforces either non-existent or vacated judgments; he is aware that this occurs but has not changed his business practices by fixing his computer system or meaningfully reviewing documents to stop it. Kavulich downplays the severity of his conduct by characterizing it as motivated by a desire to increase profits rather than by maliciousness or malice. In contrast, Morales characterizes Kavulich's actions as evincing criminal indifference towards the rights of himself and others. Because this is an issue of interpreting the character of Kavulich's actions, it creates a material question of whether his conduct qualifies as wanton and reckless or malicious. It is a question best left to the jury. *See Tillery v. Lynn*, 607 F. Supp. 399, 402 (S.D.N.Y. 1985); *Kahuna Group, Inc. v. Scarano Boat Building, Inc.*, 984 F. Supp. 109, 118 (N.D.N.Y. 1997) (parties "diametrically opposed" characterization of defendant's conduct creates an issue of fact regarding whether punitive damages is warranted). Accordingly, Morales is not precluded from seeking punitive damages against Defendants.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED. The case will proceed to trial solely on the issue of the amount of actual, statutory, and punitive damages.

SO ORDERED.

Dated: March 19, 2018
      New York, New York

_____
ANDREW L. CARTER, JR.
**United States District Judge**